IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE

| | | |
|---|---|---|
| MARK SKILLMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 195637-3 |
| | ) | **JURY DEMANDED** |
| SAFECO INSURANCE COMPANY OF | ) | |
| ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF FILING NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Safeco Insurance Company of Illinois, (hereinafter "Safeco"), hereby gives notice of the removal of this action to the United States District Court for the Eastern District of Tennessee, Knoxville Division. A copy of the Notice of Removal is attached hereto as **Exhibit A**.

Respectfully submitted,

Brian Neal (BPR #022532)
J. Matthew Kroplin (BPR #027363)
BURR & FORMAN LLP
222 Second Ave. South, Suite 2000
Nashville, TN 37201
Telephone: (615) 724-3200
Facsimile: (615) 724-3290

*Attorneys for Defendant Safeco Insurance Company of Illinois*

# Exhibit 1

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of May 2018, I served a copy of the foregoing *Notice of Filing of Removal* via U.S. mail on the following:

Garrett P. Swartwood
Taylor D. Forrester
Long, Ragsdsale & Waters, P.C.
1111 Northshore Drive, Suite S-700
Knoxville, TN 37919-4074

31557938 v1



# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Arlene Smith<br>Liberty Mutual Insurance Company<br>175 Berkeley Street<br>Boston, MA 02116 |

| | |
|---|---|
| **Entity:** | Safeco Insurance Company Of Illinois<br>Entity ID Number  2785544 |
| **Entity Served:** | Safeco Insurance Company Of Illinois |
| **Title of Action:** | Mark Skillman vs. Safeco Insurance Company of Illinois |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Knox County Chancery Court, Tennessee |
| **Case/Reference No:** | 195637-3 |
| **Jurisdiction Served:** | Tennessee |
| **Date Served on CSC:** | 05/02/2018 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | TN Department of Commerce and Insurance on 4/17/2018 |
| **How Served:** | Certified Mail |
| Sender Information: | Garrett P Swartwood<br>865-584-4040 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**Jerald.E.Gilbert@tn.gov**

April 19, 2018


Safeco Insurance Company Of Illinois          Certified Mail
2908 Poston Avenue, % C S C                   Return Receipt Requested
Nashville, TN  37203                          7017 1450 0002 1326 9222
NAIC # 39012                                  Cashier # 37947

Re:    Mark Skillman   V.   Safeco Insurance Company Of Illinois

       Docket # 195637-3

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of
Commerce and Insurance was served April 17, 2018, on your behalf in connection with the
above-styled proceeding.  Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
    Knox County
    400 Main Avenue, Rm M-30 C/C Bldg
    Knoxville, Tn  37902

IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE

FILED

| | |
|---|---|
| **MARK SKILLMAN,** | ) |
| | ) 2018 APR -9 PM 3: 24 |
| *Plaintiff,* | ) |
| | ) HOWARD G. HOGAN |
| v. | ) |
| | ) Case No. 195637-3 |
| **SAFECO INSURANCE** | ) |
| **COMPANY OF ILLINOIS,** | ) |
| | ) |
| *Defendant.* | ) |

ADA
FOR ASSISTANCE CALL
865 / 215-2952
TTY: 865 / 215-2497

## SUMMONS

To the above-named defendant:   **Safeco Insurance Company of Illinois**

      You are hereby summoned and required to serve upon Garrett P. Swartwood, Esq., plaintiff's attorney, whose address is Long, Ragsdale & Waters, P.C., 1111 Northshore Drive, S-700, Knoxville, Tennessee 37919-4074, an answer to the complaint herewith served upon you within 30 days after service of this summons and complaint upon you, exclusive of the day of service. If you fail to do so, judgment by default may be taken against you for the relief demanded in the complaint.

      Issued and tested this **9** day of **April**, **2018**.

_____
Clerk

_____
Deputy Clerk

## NOTICE

To the defendant:  **Safeco Insurance Company of Illinois**
      Tennessee law provides a Ten Thousand Dollar ($10,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not become effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

To the process server:  **Safeco Insurance Company of Illinois** can be served with process through the Tennessee Commissioner of Insurance as its agent for service of process.

## RETURN

I received this summons on the ____ day of _____, 2018. I hereby certify and return that on the ____ day of _____, 2018, I:

[ ] served this Summons and Complaint on defendant, **Safeco Insurance Company of Illinois**, in the following manner:

_____

_____

[ ] failed to serve this Summons within 90 days after its issuance because:

_____

_____

_____
Process Server

IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE:

| | |
|---|---|
| MARK SKILLMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. ___195637·3___ |
| | ) |
| SAFECO INSURANCE | ) |
| COMPANY OF ILLINOIS, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

The Plaintiff, Mark Skillman, by counsel, files this complaint against the Defendant, Safeco Insurance Company of Illinois, and for his causes of action states the following:

1.     The Plaintiff, Mark Skillman ("Plaintiff") is a natural person who resides in Knox County, Tennessee.

2.     The Defendant, Safeco Insurance Company of Illinois ("Defendant"), is an insurance company authorized to do business in the state of Tennessee. Defendant can be served though the Tennessee Commissioner of Insurance as its agent for service of process.

3.     Subject matter jurisdiction of the parties and venue for the filing of the determination of the issues in this Declaratory Judgment action is appropriate in the Knox County Chancery Court.

4.     Defendant is engaged in the business of selling property and liability insurance policies to individuals throughout the State of Tennessee.

5.     This action is brought for declaratory judgment to determine the respective rights and obligations between the parties pursuant to an insurance contract and the provisions of Tennessee

Code Annotated §§ 29-4-101, *et seq.*, and Rule 57 of the <u>Tennessee Rules of Civil Procedure</u>, and there is an actual rule controversy of a justiciable nature that now exists between the parties.

5. Defendant, in consideration of a premium to be paid and paid to it by Plaintiff, made and delivered to Plaintiff its policies of insurance, numbered F1383150; F1201091; F1207762; and F2202904 (collectively, the "Insurance Policies"), wherein Defendant insured Plaintiff for up to an amount not exceeding $70,000.00 upon the five automobiles described in the Insurance Policies as follows: (1) 1977 Chevrolet Corvette; (2) 1990 Buick Regatta; (3) 1984 Mazda RX7; (4) 1995 Chevrolet Monte Carlo; and (5) a 1994 Saab 900S (collectively, the "Insured Automobiles"), against the comprehensive loss, other than collision, by theft or larceny.

6. The Insurance Policies provided values, some of which were agreed and other being based on fair market, for the Insured Automobiles.

7. A true and correct copy of the Insurance Policies and all endorsements are attached hereto collectively as **Exhibit A** and incorporated herein by reference.

8. The Insurance Policies also provided that in the event of loss, Plaintiff shall provide notice of such loss as soon as practicable to Defendant or any of its authorized agents and also, in the event of theft, notice shall be provided to the police, and further that Plaintiff shall render a sworn statement to Defendant, stating the interest of Plaintiff and of all others in the property, the value of the property, the amount of loss or damage, use of property at time of loss, and furnish a statement of claimed loss and damage to property.

9.      At the time of the effective date of the Insurance Policies  and continuously to the time of the theft and loss of the Insured Automobiles (the theft and loss being hereinafter described), were not used in any manner that would exclude coverage afforded under the Insurance Policies.

10.     The Insurance Policies were the only contracts insuring Plaintiff against loss by theft and larceny of the Insured Automobiles.

11.     In or about September of 2015, and while the Insurance Policies were in full force and effect, the Insured Automobiles were totally lost by the theft and/or conversion by person(s) other than those in the employment, service or household of Plaintiff.

12.     The facts that give rise to Plaintiff's claim for loss under the Insurance Policies are as follows:  ·

        a.      Over a period of several years, Plaintiff brought numerous old and antique automobiles to Wallace Turner's ("Turner") business located at 1808 Riverview Road, Lenoir City, Tennessee ("Turner Property"). Turner advertises himself as an automobile mechanic operating a business known as Turner Import Automotive at the Turner Property.

        b.      During this period of time, Plaintiff also brought the Insured Automobiles to the Turner Property.

        c.      Turner promised to work on the various automobiles from time to time and perform work on a few of the vehicles; however, Turner failed or refused to perform work on many of the automobiles that remained on the Turner Property.  Plaintiff paid Turner for all of the work performed, and usually in advance.

d.     Eventually, Turner apparently stopped performing work on the Plaintiff's automobiles, despite Plaintiff's insistence that work be performed. Plaintiff demanded the return of the automobiles, including the Insured Automobiles.

c.     On or about January 5, 2015, Plaintiff attempted to remove his automobiles, including the Insured Automobiles, from the Turner Property, but Turner refused to allow Plaintiff to recover the vehicles.

d.     After some demands and negotiations by and through counsel, Plaintiff discovered that Turner had unlawfully sold most of the automobiles, including the Insured Automobiles, without Plaintiff's permission or authority in or about December of 2015.

e.     Although Plaintiff still held title to the automobiles, including Insured Automobiles, they had been sold and delivered unlawfully by Turner and are no longer in Turner's possession.

f.     Immediately after the discovery of the theft, Plaintiff made a thorough search and notified the Loudon County Sheriff's Department and reported the theft and/or conversion of the automobiles, including Insured Automobiles, by Turner.

g.     Plaintiff had entrusted Turner with the Insured Automobiles, which were insured in an amount up to $70,000.00.

h.     On December 31, 2015, Plaintiff filed a Complaint against Turner in the Chancery Court for Loudon County, Tennessee ("Turner Lawsuit").

i.     A true and correct copy of the Complaint filed in the Turner Lawsuit is attached hereto as **Exhibit B**.

j.      The Turner Lawsuit is presently set for trial.

13.     The facts that give rise to Plaintiff's causes of action against Defendant in the instant matter are as follow:

a.      Plaintiff incorporates the above paragraphs and sub-paragraphs by reference as if fully reiterated and restated herein below.

b.      On or about December 15, 2015, Plaintiff gave verbal notice of the theft and/or conversion to Defendant's agents who held the Insurance Policies.

c.      Following discussions with an agent of Defendant, Plaintiff also notified the Loudon County Sheriff's Department and reported the theft and/or conversion by Turner.

d.      On May 19, 2016, Plaintiff submitted his affidavit to Defendant describing the theft and/or conversion of the Insured Automobiles.

e.      A true and correct copy of Plaintiff's affidavit is attached hereto as **Exhibit C**.

f.      Plaintiff has complied with Defendant's agents' investigation and submitted all requested information and documentation evidencing his claim under the Insurance Policies.

f.      Under the terms and conditions of the Insurance Policies, there became due and payable to Plaintiff by Defendant the sum of up to $70,000.00.

g.      The Insurance Policies, in pertinent part, provide on pages 12-13 as follows:

## PART D — COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT

**A.**     We will pay for direct and accidental loss to **your covered auto** or any **non-owned auto**, including its equipment, any child's safety seat in use in **your covered auto** or **non-owned auto**, minus any applicable deductible shown in the

Declarations.  We will pay for loss to **your covered auto** caused by:

1.    Other than **collision** only if the declarations indicate that comprehensive coverage is provided for that automobile.

2.    **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto

<div align="center">

*

*

*

</div>

**B.**    **"Collision"** The upset of your covered automobile or a non-owned automobile or its impact with another vehicle or object.

**"Comprehensive"** means loss, other than collision to **your covered auto** or any **non-owned auto**.  Losses caused by the following are not **collision** losses but are **comprehensive** losses.

Loss caused by missiles or falling objects; fire; ***theft or larceny*** (emphasis added); .........

h.    The sum of up to $70,000.00 has neither in whole nor in part been paid, although Plaintiff, within days after ascertainment of Defendant's liability, and frequently thereafter, demanded payment by Defendant.

i.    Defendant has failed to issue payment to satisfy Plaintiff for the losses and therefore has failed to timely honor the insured claims.

j.    Indeed, on April 10, 2017, Plaintiff served formal notice pursuant to Tennessee Code Annotated § 56-7-105 on Defendant of Plaintiff's intent to bring a bad-faith claim

against Defendant if the forgoing claims were not paid in full within the sixty (60) days from receipt thereof. Plaintiff further stated that Defendant's rejection of the demand will be deemed bad faith.

      k.      A true and correct copy of the April 10, 2017 notice and its enclosures are attached hereto as **Exhibit D**.

      l.      On or about May 3, 2017, Defendant denied any and all liability to Plaintiff under the Insurance Policies, because it determined Plaintiff's claims do not meet the definition of a theft.

      m.      A true and correct copy of Defendant's May 3, 2017 correspondence is attached hereto as **Exhibit E**.

      n.      Defendant refuses without justification to pay Plaintiff the whole or any portion of his loss.

WHEREFORE, the Plaintiff prays that:

A.      Proper process issue and be served upon Defendant, requiring it to answer this Complaint for Declaratory Judgment, within the time allowed by law;

B.      At a hearing on this cause, Plaintiff be granted judgment in its favor, and that an adjudication be had that Defendant has the obligation and liability to afford coverage under the aforementioned contracts of insurance, with respect to or because of the claims of Plaintiff contained herein;

C.      A judgment be entered ordering Defendant to pay to Plaintiff for his losses and damages in an amount up to such as afforded under Tennessee Code Annotated § 56-7-105;

D.      Plaintiff be awarded his reasonable attorney fees;

E.    The Court tax the costs of this action, including discretionary costs, against the Defendant; and

F.    Plaintiff have such other, further and general relief to which he is entitled.

GARRETT P. SWARTWOOD (BPR No. 21803)
TAYLOR D. FORRESTER (BPR NO. 027228)
**LONG, RAGSDALE & WATERS, P. C.**
1111 Northshore Drive, Suite S-700
Knoxville, Tennessee 37919-4074
(865) 584-4040

*Attorneys for Plaintiff*

## COST BOND

We, Mark Skillman, as Principal, and Long, Ragsdale & Waters, P.C., as Surety, are held and firmly bound unto the Clerk and Master, Loudon County Chancery Court, for the payment of all costs awarded against the Principal. To that end, we bind ourselves, our heirs, executors and administrators. The Principal is commencing legal proceedings in the Loudon County Chancery Court. If the Principal shall pay all costs that are adjudged against him, then this obligation is void. If the Principal fails to pay, then the Surety shall undertake to pay all costs adjudged against the Principal. Mandated at Tenn. Code Ann. § 20-12-120, *et seq*.

**Principal**:

MARK SKILLMAN

2304 Carriage Lane
Knoxville, Tennessee 37920

**Surety**:
LONG, RAGSDALE & WATERS, P.C.

By:
As its:

1111 Northshore Drive, Suite S-700
Knoxville, Tennessee  37919



A Liberty Mutual Company

# TENNESSEE PERSONAL AUTO POLICY

### SAFECO INSURANCE COMPANY OF ILLINOIS
Home Office: 2800 W. Higgins Rd., Suite 1100, Hoffman Estates, Illinois 60195
Regional Office: 2055 Sugarloaf Circle, Duluth, Georgia 30097-4932
Telephone Number: (678) 417-3000

(A stock insurance company.)

## READY REFERENCE TO YOUR AUTO POLICY

| | Beginning On Page |
|---|---|
| **AGREEMENT** | 1 |
| **DEFINITIONS** | 1 |
| **PART A — LIABILITY COVERAGE** | 3 |
| Insuring Agreement | |
| Supplementary Payments | |
| Exclusions | |
| Limit of Liability | |
| Out of State Coverage | |
| Financial Responsibility | |
| Other Insurance | |
| **PART B — MEDICAL PAYMENTS COVERAGE** | 6 |
| Insuring Agreement | |
| Exclusions | |
| Limit of Liability | |
| Other Insurance | |
| **PART C — UNINSURED MOTORISTS COVERAGE** | 8 |
| Insuring Agreement | |
| Exclusions | |
| Limit of Liability | |
| Other Insurance | |
| **PART D — COVERAGE FOR DAMAGE TO YOUR AUTO** | 12 |
| Insuring Agreement | |
| Transportation Expenses | |
| Exclusions | |
| Limit of Liability | |
| Payment of Loss | |
| No Benefit to Bailee | |
| Other Sources of Recovery | |
| Appraisal | |
| **PART E — DUTIES AFTER AN ACCIDENT OR LOSS** | 16 |
| **PART F — GENERAL PROVISIONS** | 17 |
| Policy Period and Territory | |
| Changes | |
| Termination | |
| Two or More Autos Insured; Two or More Auto Policies | |

EXHIBIT

SA-1852/TNEP 2/11
G1

**** REPRINTED FROM THE FORMS LIBRARY ****

**ADDITIONAL COVERAGES**                                                    **20**

Roadside Assistance Coverage
Loss of Use Coverage
Full Safety Glass Coverage
#######################################
#######################################
#######################################
#######################################
#######################################
#######################################
#######################################
#######################################
#######################################
#######################################

SA-1852/TNEP 2/11

## AGREEMENT

In return for your payment of all premiums, and in reliance upon the statements in the application we agree to insure you subject to the terms, conditions and limitations of this policy. We will insure you for the coverages and limits shown on the Declarations. Your policy consists of the policy contract, Declarations and endorsements applicable to the policy.

## DEFINITIONS

A. Throughout this policy, "you" and "your" refer to:

   1. The "named insured" shown in the Declarations;

   2. The spouse if a resident of the same household;

   3. The civil partner, if a resident of the same household, by civil union licensed and certified by the state; or

   4. The **domestic partner,** if a resident of the same household;

   "**Domestic partner**" means a person living as a continuing partner with you and:

   (a) is at least 18 years of age and competent to contract;

   (b) is not a relative; and

   (c) shares with you the responsibility for each other's welfare, evidence of which includes:

      (1) the sharing in domestic responsibilities for the maintenance of the household; or

      (2) having joint financial obligations, resources, or assets; or

      (3) one with whom you have made a declaration of domestic partnership or similar declaration with an employer or government entity.

   **Domestic partner** does not include more than one person, a roommate whether sharing expenses equally or not, or one who pays rent to the named insured.

B. "We," "us" and "our" refer to the Company, as shown in the Declarations providing this insurance.

C. For purposes of this policy, a private passenger auto shall be deemed to be owned by a person if leased:

   1. Under a written agreement to that person; and

   2. For a continuous period of at least six months.

D. Throughout the policy, **"minimum limits"** refers to the following limits of liability required by Tennessee law to be provided under a policy of automobile liability insurance:

   1. $25,000 for each person, subject to $50,000 for each accident, with respect to **bodily injury;**

   2. $15,000 for each accident with respect to **property damage;** or

   3. If Combined Single Limit applies to the policy, $60,000 per accident.

Other words and phrases are defined. They are in bold type when used.

E. **"Bodily injury"** means bodily harm, sickness or disease, including death that results.

F. **"Business"** includes trade, profession or occupation.

G. **"Diminution in value"** means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

H. **"Family member"** means a person related to you by blood, marriage, civil union, domestic partnership or adoption who is a resident of your household. This includes a ward or foster child who is a resident of your household.

I. **"Fungi"** means any type or form of fungus, including yeast, mold or mildew, blight or mushroom and any mycotoxins, spore, scents or other substances, products or by-products produced, released by or arising out of **fungi,** including growth, proliferation or spread of **fungi** or the current or past presence of **fungi.** However, this definition does not include any **fungi** intended by the **insured** for consumption.

J. **"Occupying"** means in; upon; or getting in, on, out or off.

K. **"Property damage"** means physical injury or destruction of tangible property including loss of use.

L. **"Punitive or exemplary damages"** include damages which are awarded to punish or deter wrongful conduct, to set an example, to fine, penalize or impose a statutory penalty, and damages which are awarded for any purpose

other than as compensatory damages for **bodily injury** or **property damage.**

M. **"Trailer"** means a vehicle designed to be pulled by a:

1. Private passenger auto; or

2. Pickup, van or motorhome.

It also means a recreational camping vehicle, a farm wagon or farm implement while towed by a vehicle listed in **M.1.** or **M.2.** above.

N. **"Your covered auto"** means:

1. Any vehicle shown in the Declarations.

2. **a.** Any newly acquired vehicle, whether operational or not, on the date you become the owner, subject to conditions for **Newly Acquired Replacement Vehicle** and **Newly Acquired Additional Vehicle** under **N.2.b.** below. Any newly acquired vehicle must be of the following types:

   (1) a private passenger auto;

   (2) a pickup or van that:

      (a) has a Gross Vehicle Weight Rating of 12,000 lbs or less; and

      (b) is not used for the delivery or transportation of goods and materials unless such use is:

         i. incidental to your **business** of installing, maintaining or repairing furnishings or equipment; or

         ii. for farming or ranching; or

   (3) a motorhome or **trailer.**

   **b.** A newly acquired vehicle is subject to the following conditions:

      (1) **Newly Acquired Replacement Vehicle.** If the vehicle you acquire replaces one shown in the Declarations, the replacement vehicle will have the same coverage as the vehicle it replaced, other than Part **D** — Coverage for Damage to Your Auto. This provision applies only if there is no other insurance policy that provides coverage for that replacement vehicle.

      Part **D** — Coverage for Damage to Your Auto shall apply for the first thirty (30) days after you acquire the

vehicle, including the date of acquisition, only to the extent Part **D** — Coverage for Damage to Your Auto applied to the vehicle being replaced. You must notify us within thirty (30) days after you acquire the replacement vehicle for Part **D** — Coverage for Damage to Your Auto to continue.

      (2) **Newly Acquired Additional Vehicle.** For any newly acquired vehicle that is in addition to any shown in the Declarations coverage shall apply for the first thirty (30) days after you acquire the vehicle, including the date of acquisition. Coverage shall be the broadest coverage we provide for any vehicle shown in the Declarations. This coverage applies only if:

         (a) you acquire the additional vehicle during the policy period shown on the Declarations; and

         (b) there is no other insurance policy that provides coverage for the additional vehicle.

      If you wish to add or continue coverage you must ask us to insure the additional vehicle within thirty (30) days after you acquire the additional vehicle. This thirty (30) days of coverage includes the day you acquire the vehicle.

      (3) Collision Coverage for a newly acquired vehicle begins on the date that you acquire the vehicle. However, if the Declarations does not indicate that Collision Coverage applies to at least one vehicle, you must ask us to insure the newly acquired vehicle within four (4) days after you acquire it. If a loss occurs during the four (4) days after you acquire the vehicle but before you asked us to insure the newly acquired vehicle, a $500 collision deductible will apply.

      (4) Comprehensive Coverage for a newly acquired vehicle begins on the date that you acquire the vehicle. However, if the Declarations does not indicate that Comprehensive Coverage applies to at least one vehicle, you

must ask us to insure the newly acquired vehicle within our (4) days after you acquire it. If a loss occurs during the four (4) days after you acquire the vehicle but before you asked us to insure the newly acquired vehicle, a $500 comprehensive deductible will apply.

3. Any auto or **trailer** you do not own while used as a temporary substitute for any

other vehicle described in this definition which is out of normal use because of its:

**a.** breakdown;

**b.** repair;

**c.** servicing;

**d.** loss; or

**e.** destruction.

This provision **(N.3.)** does not apply to Coverage for Damage to Your Auto.

# PART A — LIABILITY COVERAGE

## INSURING AGREEMENT

**A.** We will pay damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy.

**B.** "**Insured**" as used in this Part means:

1. You or any **family member** for the ownership, maintenance or use of any auto or **trailer.**

2. Any person using **your covered auto** with your express or implied permission. The actual use must be within the scope of that permission.

3. For **your covered auto,** any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under **B.1.** and **B.2.** above.

4. For any auto or **trailer,** other than **your covered auto,** any other person or organization but only with respect to legal responsibility for acts or omissions of you or any **family member** for whom coverage is afforded under this Part. This provision **(B.4.)** applies only if the person or organization does not own or hire the auto or **trailer.**

## INTEREST ON JUDGMENTS

We will pay interest on judgments subject to all of the following:

1. Any notice, demand, summons, judgment, or any process has been promptly forwarded to us as required by the policy conditions.

2. We accept the defense or agree to the judgment.

3. We will pay the interest on that part of the judgment that is covered and that does not exceed our applicable limit of liability.

4. We will pay interest that accrues after entry of judgment and before we pay, tender, or deposit in court.

5. If we appeal the judgment, we will pay interest on the entire judgment.

6. Post-judgment interest is in addition to the applicable limit of liability.

7. Where we are required to cover pre-judgment interest, it shall be included in the limit of liability and is not an additional amount of insurance.

## SUPPLEMENTARY PAYMENTS

We will pay on behalf of an **insured:**

1. Up to $1,000 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in **bodily injury** or **property damage** covered under this policy. We are not obligated to apply for or furnish such bonds.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Up to $250 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

4. Other reasonable expenses incurred at our request.

5. All expenses incurred by an **insured** for first aid to others at the time of the accident, not to exceed $10,000.

## EXCLUSIONS

A. We do not provide Liability Coverage for:

   1. Any **insured** who intentionally causes **bodily injury** or **property damage** even if such **bodily injury** or **property damage** is of a different kind or degree than expected or intended, or such **bodily injury** or **property damage** is sustained by a different person or persons than expected or intended.

   2. **Property damage** to property owned or being transported by any **insured.**

   3. **Property damage** to property:

      a. rented to;

      b. used by; or

      c. in the care of;

      any insured.

      This exclusion **(A.3.)** does not apply to property damage to a residence or private garage.

   4. **Bodily injury** to an employee of any **insured** during the course of employment. This exclusion **(A.4.)** does not apply to **bodily injury** to a domestic employee unless workers compensation benefits are required or available for that domestic employee.

   5. Any **insured's** liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This exclusion **(A.5.)** does not apply to a share-the-expense car pool.

   6. Any **insured** using any vehicle while employed in the pickup or delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an **insured's business.**

   7. a. Any **insured** while employed or otherwise engaged in the **business** of:

      (1) selling;

      (2) repairing;

      (3) servicing;

      (4) storing; or

      (5) parking;

      vehicles designed for use mainly on public highways. This includes road testing and delivery.

      b. This exclusion **(A.7.)** does not apply to the ownership, maintenance or use of **your covered auto** by:

      (1) you;

      (2) any **family member;** or

      (3) any partner, agent or employee of you or any **family member.**

   8. Any **insured** maintaining or using any vehicle while that **insured** is employed or otherwise engaged in any **business** (other than farming or ranching) not described in Exclusions **A.6.** or **A.7.** This exclusion **(A.8.)** does not apply to the maintenance or use of a:

      a. private passenger auto;

      b. pickup, motorhome or van that:

      (1) you own; or

      (2) you do not own while used as a temporary substitute for **your covered auto** which is out of normal use because of its:

         (a) breakdown;

         (b) repair;

         (c) servicing;

         (d) loss; or

         (e) destruction; or

      c. **trailer** used with a vehicle described in **A.8.a.** or **A.8.b.** above.

   9. Any **insured** using a vehicle without the express or implied permission of the owner or other person having lawful possession, or using a vehicle beyond the scope of the permission granted. However, this exclusion does not apply to a **family member** using **your covered auto.**

   10. a. **Bodily injury** or **property damage** for which any **insured:**

       (1) is an insured under a nuclear energy liability policy; or

       (2) would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

       b. A nuclear energy liability policy is a policy issued by any of the following or their successors:

       (1) Nuclear Energy Liability Insurance Association;

       (2) Mutual Atomic Energy Liability Underwriters; or

       (3) Nuclear Insurance Association of Canada.

   11. **Bodily injury** to you or any **family member.**

12. **Bodily injury** or **property damage** arising out of the use of **your covered auto** while leased or rented to others. However, this exclusion does not apply to the operation of **your covered auto** by you or a **family member.**

13. **Bodily injury** or **property damage** arising out of a criminal act or omission of the **insured.** This exclusion applies regardless of whether that **insured** is actually charged with, or convicted of, a crime. However, this exclusion **(13.)** does not apply to traffic violations.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. a. Any vehicle which:

   (1) has fewer than four wheels;

   (2) is designed mainly for use off public roads; or

   (3) is a vehicle not licensed for use on public roads.

   b. This exclusion does not apply:

   (1) while such vehicle is being used by an **insured** in a medical emergency; or

   (2) to any **trailer.**

2. Any vehicle, other than **your covered auto,** which is:

   a. owned by you; or

   b. furnished or available for your regular use.

3. a. Any vehicle, other than **your covered auto,** which is:

   (1) owned by any **family member** or other person who resides with you; or

   (2) furnished or available for the regular use of any **family member** or other person who resides with you.

   b. However, this exclusion **(B.3.)** does not apply to you while you are maintaining or **occupying** any vehicle which is:

   (1) owned by a **family member** or other person who resides with you; or

   (2) furnished or available for the regular use of a **family member** or other person who resides with you.

4. Any vehicle while it is:

   a. operating on a surface designed or used for racing, except for an

organized and controlled event that is not a speed, performance, stunt or demolition event;

   b. participating in a high performance driving or racing instruction course or school; or

   c. preparing for, practicing for, used in, or competing in any prearranged or organized:

   (1) race activity; or

   (2) speed, performance, stunt, or demolition contest or exhibition.

## LIMIT OF LIABILITY

A. If the Declarations indicates "per person"/"per accident" coverage applies:

The limit of liability as shown in the Declarations for "each person" for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in any one auto accident.

Subject to this limit for "each person," the limit of liability shown in the Declarations for "each accident" for Bodily Injury Liability is our maximum limit of liability for all damages for **bodily injury** resulting from any one auto accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all **property damage** resulting from any one accident.

This is the most we will pay regardless of the number of:

1. **Insureds;**

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

B. If the Declarations indicate **Combined Single Limit** applies, Paragraph **A.** above is replaced by the following:

The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. **Insureds;**

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

We will apply the limit of liability to provide any separate **minimum limits** required by law for **bodily injury** and **property damage** liability.

However, this provision will not change our total limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part **B** or Part **C** of this policy.

D. A vehicle and attached **trailer** are considered one vehicle. Therefore the limits of liability will not be increased for an accident involving a vehicle which has an attached **trailer.**

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which your covered auto is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for **bodily injury** or **property damage** higher than the limit shown in the Declarations, your

policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum limits and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required. The insured must reimburse us if we make a payment that we would not have made if this policy was not certified as proof of financial responsibility.

## OTHER INSURANCE

If there is other applicable liability insurance available any insurance we provide shall be excess over any other applicable liability insurance. If more than one policy applies on an excess basis, we will bear our proportionate share with other collectible liability insurance.

---

# PART B — MEDICAL PAYMENTS COVERAGE

## INSURING AGREEMENT

A. We will pay **usual and customary charges** incurred for reasonable and necessary medical and funeral expenses because of **bodily injury:**

1. Caused by accident; and

2. Sustained by an **insured.**

We will pay only those expenses incurred for services rendered within three (3) years from the date of the accident.

We have a right to review medical expenses and services to determine if they are reasonable and necessary for the **bodily injury** sustained.

B. **"Insured"** as used in this Part means:

1. You or any **family member:**

   a. while **occupying;** or

   b. as a pedestrian or bicyclist when struck by;

   a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while **occupying your covered auto** with your express or implied permission. The actual use must be within the scope of that permission.

3. Any other person while **occupying**, as a guest, an automobile not owned by you

or a **family member,** while being operated by you or a **family member.**

C. **"Usual and customary charges"** as used in this Part mean:

Any amount which we determine represents a customary charge for services in the geographic area in which the service is rendered. To determine whether a charge is customary, we may consider outside sources of information of our choice, including, but not limited to:

1. Licensed, certified or registered health care professionals;

2. Medical examinations;

3. Medical file reviews;

4. Medical bill review services; or

5. Computerized data bases.

The **insured** shall not be responsible for payment of any reduction applied by us. If a medical provider disputes an amount paid by us, we will be responsible for resolving such disputes.

## EXCLUSIONS

We do not provide Medical Payments Coverage for any **insured** for **bodily injury:**

1. Sustained while **occupying** any motorized vehicle having fewer than four wheels.

**2.** Sustained while **occupying your covered auto** when it is being used as a public or livery conveyance. This exclusion **(2.)** does not apply to a share-the-expense car pool.

**3.** Sustained while **occupying** any vehicle while employed in the pickup or delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an **insured's business.**

**4.** Sustained while **occupying** any vehicle located for use as a residence or premises.

**5.** Occurring during the course of employment if workers compensation benefits are required or available for the **bodily injury.**

**6.** Sustained while **occupying,** or when struck by, any vehicle (other than **your covered auto**) which is:

**a.** owned by you; or

**b.** furnished or available for your regular use.

**7.** Sustained while **occupying,** or when struck by, any vehicle (other than **your covered auto**) which is:

**a.** owned by any **family member** or other person who resides with you; or

**b.** furnished or available for the regular use of any **family member** or other person who resides with you.

However, this exclusion **(7.)** does not apply to you.

**8.** Sustained while **occupying** a vehicle without the express or implied permission of the owner or other person having lawful possession, or using a vehicle beyond the scope of the permission granted. However this exclusion does not apply to a **family member** using **your covered auto.**

**9.** Sustained while **occupying** a vehicle when it is being used in the **business** of an **insured.** This exclusion **(9.)** does not apply to **bodily injury** sustained while **occupying** a:

**a.** private passenger auto;

**b.** pickup, van or motorhome that you own; or

**c.** **trailer** used with a vehicle described in **a.** or **b.** above.

**10.** Caused by or as a consequence of:

**a.** discharge of a nuclear weapon (even if accidental);

**b.** war (declared or undeclared);

**c.** civil war;

**d.** insurrection; or

**e.** rebellion or revolution.

**11.** From or as a consequence of the following, whether controlled or uncontrolled or however caused:

**a.** nuclear reaction;

**b.** radiation; or

**c.** radioactive contamination.

**12.** Sustained while **occupying** any vehicle while it is:

**a.** operating on a surface designed or used for racing except for an organized and controlled event that is not a speed, performance, stunt or demolition event;

**b.** participating in a high performance driving or racing instruction course or school; or

**c.** preparing for, practicing for, used in, or competing in any prearranged or organized:

**(1)** race activity; or

**(2)** speed, performance, stunt, or demolition contest or exhibition.

**13.** Caused by the actual, alleged or threatened presence, growth, proliferation or spread of **fungi** or bacteria.

**LIMIT OF LIABILITY**

**A.** The limit of liability show in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

**1.** **Insureds;**

**2.** Claims made;

**3.** Vehicles or premiums shown in the Declarations; or

**4.** Vehicles involved in the accident.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part **A** or Part **C** of this policy.

**OTHER INSURANCE**

If there is other applicable auto medical payments insurance available any insurance we provide shall be excess over any other applicable auto medical payments insurance. If more than one policy applies on an excess basis, we will bear our proportionate share with other collectible auto medical payments insurance.

# PART C — UNINSURED MOTORISTS COVERAGE

## INSURING AGREEMENT

A.  We will pay damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of:

1.  **Bodily injury** sustained by that **insured** and caused by an accident; and

2.  **Property damage** caused by accident if the Declarations indicate that both Bodily Injury and Property Damage Uninsured Motorists Coverage applies.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle**.

With respect to coverage under Section **2.** of the definition of **uninsured motor vehicle**, we will pay under this coverage only if **1.** or **2.** below applies:

1.  The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements; or

2.  A tentative settlement has been made between an **insured** and the insurer of the **underinsured motor vehicle** and we:

    a.  have been given prompt written notice of such tentative settlement; and

    b.  advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification.

Any judgment for damages arising out of suit brought without our written consent is not binding on us.

B.  **"Insured"** as used in this Part means:

1.  You or any **family member.**

2.  Any Rated Driver shown on the Declarations other than you or a **family member.**

3.  Any other person **occupying your covered auto** with your express or implied permission. The actual use must be within the scope of that permission.

4.  Any person entitled to recover damages because of **bodily injury** to which this coverage applies sustained by a person described in **B.1., B.2.** or **B.3.** above.

C.  **"Property damage"** as used in this Part means physical injury to or destruction of:

1.  **Your covered auto.**

2.  Any property owned by a person listed in **B.1., B.2.** or **B.3.** of an **insured** while contained in **your covered auto.**

D.  **"Uninsured motor vehicle"** means a land motor vehicle or trailer of any type:

1.  To which no liability bond or policy applies at the time of the accident.

2.  For which the sum of the limits of liability available for payment to an **insured** under all policies, bonds and securities applicable at the time of the accident:

    a.  is less than the limit of liability for this coverage; or

    b.  has been reduced by payment to persons other than the **insured** to an amount which is less than the limit of liability for this coverage.

3.  Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in **bodily injury** or **property damage** without hitting:

    a.  you, any **family member** or any other rated driver shown on the Declarations;

    b.  a vehicle which you, any **family member** or any other rated driver shown on the Declarations are **occupying;** or

    c.  **your covered auto.**

    If there is no physical contact with the hit-and-run vehicle the facts of the accident must be proven by clear and convincing evidence. We will only accept competent evidence other than evidence provided by an occupant of:

    a.  **your covered auto,** if **your covered auto** is involved in the accident.

    b.  the vehicle you, any **family member** or any other rated driver shown on the Declarations are **occupying,** if you, any **family member** or any other rated driver shown on the Declarations are **occupying** a vehicle other than **your covered auto** at the time of the accident.

4.  To which a liability bond or policy applies at the time of the accident, but the bonding or insuring company:

    a.  denies coverage; or

    b.  is or becomes insolvent.

However, **"uninsured motor vehicle"** does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you, any **family member** or any other rated driver shown on the Declarations.

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3. Designed mainly for use off public roads while not on public roads.

4. While located for use as a residence or premises.

## EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for **bodily injury** or **property damage** sustained:

1. By an **insured** while **occupying,** or when struck by, any motor vehicle owned by that **insured** which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By any **family member** while **occupying,** or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Uninsured Motorists Coverage for **bodily injury** or **property damage** sustained by any **insured:**

1. If that **insured** or the legal representative settles the **bodily injury** claim without our consent. This exclusion **(B.1)** does not apply to a settlement made with the insurer of a vehicle described in Section **2.** of **uninsured motor vehicle.**

2. While **occupying your covered auto** when it is being used as a public or livery conveyance. This exclusion **(B.2.)** does not apply to a share-the-expense car pool.

3. While using any vehicle while employed in the pickup or delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an **insured's business.**

4. While using a vehicle without the express or implied permission of the owner or other person having lawful possession, or using a vehicle beyond the scope of the permission granted. However, this exclusion does not apply to you, any **family member** or any other

rated driver shown on the Declarations using **your covered auto.**

5. While **occupying** or operating an owned motorcycle or moped.

6. For the first $200 of the amount of **property damage** to the property of each **insured** as the result of any one accident. This exclusion **(B.6.)** does not apply if:

a. we insure **your covered auto** for both Collision Coverage and Uninsured Motorists Property Damage Coverage; and

b. the operator of the **uninsured motor vehicle** is positively identified and is solely at fault.

7. If the property is contained in or struck by a motor vehicle (other than **your covered auto**) owned by you, any **family member** or any other rated driver shown on the Declarations.

8. While using any vehicle while it is:

a. operating on a surface designed or used for racing except for an organized and controlled event that is not a speed, performance, stunt or demolition event;

b. participating in a high performance driving or racing instruction course or school; or

c. preparing for, practicing for, used in, or competing in any prearranged or organized:

(1) race activity; or

(2) speed, performance, stunt, or demolition contest or exhibition.

C. This coverage shall not apply directly or indirectly to benefit:

1. Any insurer or self-insurer under any of the following or similar law:

a. workers compensation law; or

b. disability benefits law.

2. Any insurer of property.

D. We do not provide Uninsured Motorists Coverage for **punitive or exemplary damages.**

E. We do not provide Uninsured Motorists Coverage for loss to **your covered auto,** any **non-owned auto** or **trailer** for **diminution in value.**

## LIMIT OF LIABILITY

A. The limit of bodily injury liability shown in the Declarations for "each person" for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages

for care and loss of services (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in any one auto accident.

Subject to this limit for "each person", the limit of liability shown in the Declarations for "each accident" for Uninsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one auto accident.

The limit of Property Damage liability shown in the Declarations for "each accident" for Uninsured Motorists Coverage is our maximum limit of liability for all **property damage** resulting from any one accident.

This is the most we will pay regardless of the number of:

1. **Insureds;**

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

**B.** If the Declarations indicate Combined Single Limit Coverage applies to Uninsured Motorists Coverage, paragraph **(A.)** above is replaced by the following:

The limit of liability shown in the Declarations for Uninsured Motorists Coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

1. **Insureds;**

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

**C.** The limit of liability shall be reduced by all sums:

1. Paid because of the **bodily injury** or **property damage** by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part **A** of the policy; and

2. Paid or payable because of the **bodily injury** under any of the following or similar law:

   a. workers compensation law; or

   b. disability benefits law.

**D.** No payment will be made for loss paid or payable to the **insured** under Part **D** of the policy.

**E.** No one will be entitled to receive duplicate payments for the same elements of loss

under this coverage and Part **A** or Part **B** of this policy.

**F.** We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

**G.** We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers compensation law; or

2. Disability benefits or occupational disease laws.

**H.** A vehicle and attached **trailer** are considered one vehicle. Therefore the limits of liability will not be increased for an accident involving a vehicle which has an attached **trailer.**

**OTHER INSURANCE**

**A.** If there is other applicable insurance available under one or more policies or provisions of coverage, any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any one policy or provision of coverage.

**B.** Subject to Paragraph **A.**, with respect to **bodily injury** to an **insured:**

1. While not **occupying** a vehicle, only the policy or provision, under which the injured person is an **insured**, that provides the highest limit of liability of uninsured motorists coverage, will apply. No other policies or provisions of coverage with lesser limits of liability will apply. If two or more policies or provisions of coverage provide the highest limit of liability, they will share the loss equally.

2. While **occupying** a vehicle owned by that **insured**, only the uninsured motorists coverage applicable to that vehicle will apply, and no other policies or provisions of coverage will apply.

3. While **occupying** a vehicle not owned by that **insured**, the following will be the priorities of recovery:

   FIRST PRIORITY The uninsured motorists coverage applicable to the vehicle the insured was occupying at the time of the accident.

   SECOND PRIORITY If the first priority is exhausted, only the policy or provision, applicable to a vehicle under which the insured is a named insured, that provides the highest limit of liability of uninsured motorists coverage.

THIRD PRIORITY: If the first and second priorities are exhausted, only the policy or provision, applicable to a vehicle under which the insured is other than a named insured, that provides the highest limit of liability of uninsured motorists coverage.

If two or more policies or provisions of coverage in the second or third priority provide the highest limit of liability, they will equally share the loss applicable to that priority. No policies or provisions of coverage with lesser limits of liability will apply to the second or third priority.

## ARBITRATION IN THE EVENT OF OUR CONSENT TO A FULL LIMITS SETTLEMENT OFFER FROM A LIABLE PARTY

The following provision applies with respect to arbitration proceedings that are subject to the requirements of the Tennessee Uninsured Motorists Coverage statute regarding a full limits settlement offer from a liable party:

**A.** If a tentative settlement is made between an **insured** and the insurer, owner or operator of the **uninsured motor vehicle** for the full limits of all liability policies or bonds available to the party on whose behalf the tentative settlement is made, and:

1. We receive written notice from the **insured**, sent certified mail return receipt requested or by some other method with written verification, of the **insured's**:

    a. Intent to accept the offer thereby releasing the party on whose behalf the offer is made; and

    b. Agreement to submit the uninsured motorists claim to binding arbitration;

2. We receive written notice from the insurer of the **uninsured motor vehicle,** sent certified mail return receipt requested or by some other method with written verification, of the offer, and such insurer:

    a. Provides verification of coverage upon request; and

    b. Confirms to us that the owner or operator of the **uninsured motor vehicle** agrees to cooperate in connection with the arbitration of the uninsured motorists claim; and

3. We consent to the tentative settlement in writing, sent certified mail return receipt requested or by some other method with written verification; within 30 days from receipt of both notices described in Paragraphs **1.** and **2.** above, thereby waiving our right to recover payment from the

owner or operator of an **uninsured motor vehicle** in exchange for their written agreement to cooperate in connection with the arbitration;

then all issues of tort liability and damages arising out of the ownership, maintenance or use of the **uninsured motor vehicle** shall be arbitrated. However, if the settlement does not release all parties alleged to be liable to the **insured**, arbitration of the uninsured motorist claim shall not be conducted until all such parties have been fully and finally disposed by settlement, final judgment or otherwise.

Disputes concerning coverage under this Part may not be arbitrated and shall be decided by a court of competent jurisdiction.

**B.** An arbitrator shall be selected by agreement of the parties. If they cannot agree on an arbitrator, either party may request a judge of a court of record in the county in which the arbitration is pending to designate three potential arbitrators. The parties shall then agree upon one of the three arbitrators so designated.

**C.** Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Rules of law as to procedure and evidence applicable to the state courts where the arbitration is being conducted will apply.

**D.** Expenses will be paid as follows:

1. Except for the arbitrator's fee, each party will pay for the expenses it incurs.

2. If the arbitrator's award is:

    a. Less than or equal to the total amount collected by the **insured** by way of settlements or judgments plus the amount of any settlement offer made by us at least 15 days prior to the arbitration, the insured will pay the arbitrator's fee.

    b. Greater than the total amount collected by the **insured** by way of settlements or judgments plus the amount of any settlement offer made by us at least 15 days prior to the arbitration, we will pay the arbitrator's fee.

**E.** Any decision made by the arbitrator will be binding.

## ARBITRATION OF OTHER DISPUTES BETWEEN AN INSURED" AND US

The following provisions apply with respect to arbitration proceedings that are NOT subject to the requirements of the Tennessee Uninsured

Motorists Coverage statute regarding a full limits settlement offer from a liable party:

A. If we and an **insured** do not agree:

    1. Whether that **insured** is legally entitled to recover damages; or

    2. As to the amount of damages which are recoverable by that **insured;**

from the owner or operator of an **uninsured motor vehicle**, then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

    1. Pay the expenses it incurs; and

    2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

    1. Whether the **insured** is legally entitled to recover damages; and

    2. The amount of damages. This applies only if the amount does not exceed the **minimum limit** for liability specified by the financial responsibility law of Tennessee. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

**ADDITIONAL DUTY**

A person seeking Uninsured Motorists Coverage under Section **2.** of the definition of **uninsured motor vehicle** must also promptly notify us in writing of a tentative settlement between the **insured** and the insurer of the **uninsured motor vehicle** and allow us 30 days to advance payment to that **insured** in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such **uninsured motor vehicle.**

## PART D — COVERAGE FOR DAMAGE TO YOUR AUTO

**INSURING AGREEMENT**

A. We will pay for direct and accidental loss to **your covered auto** or any **non-owned auto,** including its equipment, any child safety seat in use in **your covered auto** or **non-owned auto,** minus any applicable deductible shown in the Declarations. We will pay for loss to **your covered auto** caused by:

    1. Other than **collision** only if the Declarations indicate that Comprehensive Coverage is provided for that auto.

    2. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a **non-owned auto,** we will provide the broadest coverage applicable to any vehicle shown in the Declarations.

**Deductible**

Unless stated otherwise, the applicable deductible shown in the Declarations shall be applied to each accidental loss covered under this Part of the policy. However,

    a. if loss to more than one of **your covered autos** or a **non-owned auto** results from the same loss, only the highest applicable deductible will apply;

    b. In the event of a **collision** with another vehicle insured by:

        (a) a Safeco insurance company; or

        (b) another Liberty Mutual Agency Markets Corporation company;

    no deductible will apply.

    This does not include a vehicle described as **your covered auto** or a **non-owned auto.**

    c. No deductible will apply to **your covered auto** or a **non-owned auto** if the loss to **your covered auto** or a **non-owned auto** results from the same event as a loss covered under your Safeco Homeowners, Condominium or Renters policy and we issue a payment under your Homeowners, Condominium or Renters policy for the loss.

B. "**Collision**" means the upset of **your covered auto** or a **non-owned auto** or its impact with another vehicle or object.

"**Comprehensive**" means loss, other than **collision,** to **your covered auto** or a **non-owned auto.** Losses caused by the following

are not **collision** losses but are **comprehensive** losses:

Loss caused by missiles or falling objects; fire; theft or larceny; explosion or earthquake; windstorm; hail, water or flood; malicious mischief or vandalism; riot or civil commotion; contact with a bird or animal; or breakage of glass.

If breakage of glass is caused by a **collision,** you may elect to have it considered a loss caused by **collision.**

**C.** **1.** "Non-owned auto" means:

    **a.** Any private passenger auto, pickup, van (other than a cargo van) or **trailer** with a Gross Vehicle Weight Rating of 12,000 pounds or less or any cargo van or moving van with a Gross Vehicle Weight Rating of 18,000 pounds or less not owned by or furnished or available for the regular use of you or any **family member** while in the custody of or being operated by you or any **family member;** or

    **b.** Any auto or **trailer** you do not own while used as a temporary substitute for **your covered auto** which is out of normal use because of its:

      **(1)** breakdown;

      **(2)** repair;

      **(3)** servicing;

      **(4)** loss; or

      **(5)** destruction.

  **2.** "Non-owned auto" does not include any vehicle which has been operated or rented by or in the possession of you or any **family member** for 30 or more consecutive days. This does not apply to a temporary substitute vehicle authorized by us.

**D.** "Camper body" means a body equipped as sleeping or living quarters which is designed to be mounted on a pickup.

**TRANSPORTATION EXPENSES**

**A.** Subject to the limitations described in paragraphs **B.** and **C.,** below, we will pay:

  **1.** Temporary transportation expenses incurred by you in the event of the total theft of **your covered auto** or a **non-owned auto.** We will pay for such expenses only if the Declarations indicate that Comprehensive Coverage is provided for that auto. We will pay only expenses incurred during the period:

    **a.** beginning 48 hours after the theft; and

    **b.** ending when **your covered auto** or the **non-owned auto** is returned to use or we pay for its loss.

  **2.** Indirect loss expenses for which you become legally responsible in the event of a loss to a **non-owned auto.** We will pay only expenses beginning when the **non-owned auto** is withdrawn from use for more than 24 hours. We will pay for indirect loss expenses if the loss is caused by:

    **a.** a **comprehensive** loss only if the Declarations indicate that Comprehensive Coverage is provided for any **your covered auto.**

    **b.** **collision** only if the Declarations indicate that Collision Coverage is provided for any **your covered auto.**

**B.** For the expenses described in paragraphs **A.1.** and **A.2.** we will pay the greater of the following, without application of a deductible:

  **1.** Up to $25 per day, to a maximum of $750; or

  **2.** The limit for Loss of Use, if any, shown in the Declarations.

**C.** Our payment for the expenses described in paragraphs **A.1.** and **A.2.** will be limited to that period of time reasonably required to repair or replace the **your covered auto** or the **non-owned auto.**

**EXCLUSIONS**

We will not pay for:

**1.** Loss to **your covered auto** or any **non-owned auto** which occurs while it is being used as a public or livery conveyance. This exclusion **(1.)** does not apply to a share-the-expense car pool.

**2.** Loss to **your covered auto** or any **non-owned auto** while employed in the pickup or delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an **insured's business.**

**3.** Damage or loss due and confined to:

    **a.** wear and tear;

    **b.** freezing;

    **c.** mechanical or electrical breakdown or failure; or

    **d.** road damage to tires.

    This exclusion **(3.)** does not apply if the damage results from the total theft of **your covered auto** or any **non-owned auto.**

**4.** Damage or loss arising out of neglect. Neglect means your failure to do adequately

maintain **your covered auto** or **non-owned auto** after the loss.

With respect to water under Comprehensive Coverage, there is no coverage for:

**a.** moisture, condensation, humidity, or vapor;

**b.** water intrusion around or through panels, surfaces and seals; or

**c.** water that collects in spaces or ventilation systems; or

**d.** **fungi,** dry rot or bacteria;

resulting from neglect.

**5.** Loss due to or as a consequence of:

**a.** discharge of any nuclear weapon (even if accidental);

**b.** war (declared or undeclared);

**c.** civil war;

**d.** insurrection; or

**e.** rebellion or revolution.

**6.** Loss from or as a consequence of the following, whether controlled or uncontrolled or however caused:

**a.** nuclear reaction;

**b.** radiation; or

**c.** radioactive contamination.

**7.** Loss to:

**a.** any electronic equipment designed for the production or reproduction of sound, pictures, audio, visual or data or that receives or transmits sound, pictures or data signals.

**b.** This exclusion (**7.**) does not apply to:

**(1)** equipment designed for the reproduction of sound or transmission of sound, pictures, audio, visual or data signals and accessories used with such equipment, provided:

**(a)** the electronic equipment is permanently installed by the original vehicle manufacturer or manufacturer's dealership in **your covered auto** or any **non-owned auto;** or

**(b)** the electronic equipment is:

**i.** removable from a housing unit which is permanently installed by the original vehicle manufacturer or

manufacturer's dealership in the auto;

**ii.** designed to be solely operated by use of the power from the auto's electrical system; and

**iii.** in or upon **your covered auto** or any **non-owned auto;**

at the time of loss.

**(c)** any equipment installed through our Teen Safe Driver™ program.

However, we will pay only up to a total of $1,000 or the actual cash value of **your covered auto** or any **non-owned auto,** whichever is less, for all such equipment that is not installed by the original vehicle manufacturer or manufacturer's dealership.

**(2)** any other electronic equipment that is:

**(a)** necessary for the normal operation of the auto or the monitoring of the auto's operating systems;

**(b)** an integral part of the same unit housing any electronic equipment described in **7.a.** and permanently installed by the original vehicle manufacturer or manufacturer's dealership in **your covered auto** or any **non-owned auto.**

**8.** Loss to:

**a.** tapes, records, discs, or other media used with such equipment described in exclusion (**7.**); or

**b.** any other accessories, not permanently installed used with such equipment described in exclusion (**7.**).

**9.** Loss to **your covered auto** or any **non-owned auto** due to destruction or confiscation by governmental or civil authorities because you or any **family member:**

**a.** engaged in illegal activities; or

**b.** failed to comply with Environmental Protection Agency or Department of Transportation standards.

This exclusion (**9.**) does not apply to the interests of Loss Payees in **your covered auto.**

10. Loss to a **camper body,** motorhome or **trailer** you own which is not shown in the Declarations. This exclusion (**10.**) does not apply to a **camper body,** motorhome or **trailer** you:

    a. acquire during the policy period; and

    b. ask us to insure within 30 days after you become the owner.

11. Loss to any **non-owned auto** when used by you or any **family member** without the express or implied permission of the owner or other person having lawful possession, or using a vehicle beyond the scope of the permission granted.

12. Loss to equipment, whether operational or not, whose design may be used for the detection or location of law enforcement equipment.

13. Loss to any **non-owned auto** being maintained or used by any person while employed or otherwise engaged in the **business** of:

    a. selling;

    b. repairing;

    c. servicing;

    d. storing; or

    e. parking;

    vehicles designed for use on public highways. This includes road testing and delivery.

14. Loss to any **non-owned auto** being maintained or used by any person while employed or otherwise engaged in any **business** not described in exclusion **2.** and **13.** This exclusion (**14.**) does not apply to the maintenance or use by you or any **family member** of a **non-owned auto** which is a private passenger auto or **trailer.**

15. Loss to **your covered auto** or any **non-owned auto** while it is:

    a. operating on a surface designed or used for racing. This does not apply to an organized and controlled event that is not a speed, performance, stunt or demolition event;

    b. participating in a high performance driving or racing instruction course or school; or

    c. preparing for, practicing for, used in, or competing in any prearranged or organized:

        (1) race activity; or

        (2) speed, performance, stunt, or demolition contest or exhibition.

16. Loss to, or loss of use of, a **non-owned auto** rented by:

    a. you; or

    b. any **family member;**

    if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that **family member,** pursuant to the provisions of any applicable rental agreement or state law.

17. Loss to **your covered auto** or any **non-owned auto,** arising out of the actual, alleged or threatened presence, growth, proliferation or spread of **fungi,** dry rot or bacteria.

18. Loss to **your covered auto, non-owned auto,** or **trailer,** for **diminution in value.**

19. Loss in excess of $1,000 per claim or the actual cash value of **your covered auto** or any **non-owned auto,** whichever is less, for any furnishings or equipment that were not installed by the original vehicle manufacturer or manufacturer's dealership which mechanically or structurally changes your vehicle and results in increase in performance or change in appearance, including but not limited to:

    a. custom murals, paintings or other decals or graphics;

    b. custom wheels, tachometers, pressure and temperature gauges;

    c. modified or custom engines and fuel systems, light bars, racing slicks and/or oversized tires, roll bars and liftkits, winches, utility boxes, and tool boxes; or

    d. non-standard paint.

    This exclusion does not apply to equipment installed to make a vehicle handicap accessible.

20. Loss arising out of the use of **your covered auto** while leased or rented to others.

21. Loss to **your covered auto** or a **non-owned auto** caused by an intentional act by you or a **family member,** or at the direction of you or a **family member.**

## LIMIT OF LIABILITY

A. At our option, our limit of liability for loss will be the lowest of:

1. The actual cash value of the stolen or damaged property;

2. a. The amount necessary to repair or replace the property;

   b. Determination of the cost of repair or replacement will be based upon one of the following:

      (1) the cost of repair or replacement agreed upon by you and us;

      (2) a competitive bid approved by us; or

      (3) an estimate written based upon the prevailing competitive price. You agree with us that we may include in the estimate parts furnished by the original vehicle manufacturer or parts from other sources including non-original equipment manufacturers. The prevailing competitive price means prices charged by a majority of the repair market in the area where the vehicle is to be repaired as determined by us; or

3. The limit of liability shown in the Declarations.

   However, the most we will pay for loss to any **non-owned auto,** which is a **trailer,** is $1,500.

B. An adjustment for depreciation and physical condition may be made based upon the physical condition and wear and tear of the property or damaged part of the property at the time of the loss. This adjustment for physical condition includes but is not limited to, broken, cracked or missing parts, rust, dents, scrapes, gouges and paint condition. When replacing parts normally subject to repair or replacement during the useful life of the vehicle, we will not pay for the amount of any betterment.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a **non-owned auto** shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the **non-owned auto;**

2. Any other applicable physical damage insurance;

3. Any other source of recovery applicable to the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

---

# PART E — DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless if the failure to comply with the following duties is prejudicial to us.

A. We must be notified promptly of how, when and where the accident or loss happened.

Notice should also include the names and addresses of any injured persons and of any witnesses.

**B.** A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:

   a. to physical examinations by physicians we select. We will pay for these exams.

   b. to examination under oath and subscribe the same. We may examine any **insured** separately and apart from the presence of any other **insured.**

4. Authorize us to obtain:

   a. medical reports; and

   b. other pertinent records.

5. Submit a proof of loss, under oath if requested, when required by us.

**C.** A person seeking Uninsured Motorists Coverage must also:

1. Report the accident to the police or other civil authority within twenty-four (24) hours or as soon as practicable if a hit-and-run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

**D.** A person seeking Coverage for Damage to Your Auto must also:

1. Take reasonable steps after loss to protect **your covered auto** or any **non-owned auto** and its equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if **your covered auto** or any **non-owned auto** is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F — GENERAL PROVISIONS

### POLICY PERIOD AND TERRITORY

**A.** This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

**B.** The policy period is the period stated in the Declarations. The policy may be renewed for successive policy periods if the required premium is paid and accepted by us on or before the expiration of the current policy period. The premium will be computed at our then current rate for coverage then offered.

**C.** The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, **your covered auto** while being transported between their ports.

### BANKRUPTCY

Bankruptcy or insolvency of the insured shall not relieve us of any obligations under this policy.

### CHANGES

**A.** This policy, your Declarations page and endorsements issued by us to this policy

contain all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

**B.** The premium for your policy is based on information we have received from you or other sources. You agree to cooperate with us in determining if this information is correct and complete and you will notify us if it changes. If this information is incorrect, incomplete, or changes, we will adjust your premium during the policy term or take other appropriate action based upon the corrected, completed or changed information. Changes during the policy term that will result in a premium increase or decrease during the policy term include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles.

2. Operators using insured vehicles including newly licensed **family member** drivers and any household members that have licenses.

3. The location where your vehicle is principally garaged.

4. Customized equipment or parts.

You also agree to disclose all licensed drivers residing in your household.

**C.** If we make a change which broadens coverage under this edition of your policy without

additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (**C.**) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

**D.** Additional or return premium of $3.00 or less resulting from policy changes will be waived.

## PAYMENT OF PREMIUM

If your initial premium payment is by check, draft or any remittance other than cash, coverage under this policy is conditioned upon the check, draft or remittance being honored upon presentment to the bank or other financial institution. If the check, draft or remittance is not honored upon presentment, this policy may, at our option, be deemed void from its inception. This means that we will not be liable under this policy for any claims or damages which would otherwise be covered if the check, draft, or remittance had been honored upon presentment.

## FRAUD

This policy was issued in reliance upon the information provided on your application. We may void this policy if you or an insured have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, at the time application was made or any time during the policy period.

We may void this policy or deny coverage for an accident or loss if you or an insured have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

We may void this policy or deny coverage for fraud or material misrepresentation even after the occurrence of an accident or loss. This means we will not be liable for any claims or damages which would otherwise be covered. If we make a payment, we may request that you reimburse us. If so requested, you must reimburse us for any payments we may have already made.

## LEGAL ACTION AGAINST US

**A.** No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part **B** no legal action may be brought against us under:

1. We agree in writing that the **insured** has a legal obligation to pay damages; or

2. The amount of that obligation has been finally determined by judgment after trial.

**B.** No person or organization has any right under this policy to bring us into any action to determine the legal liability of an **insured**.

## OUR RIGHT TO RECOVER PAYMENT

**A.** If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another person, entity or organization we shall be subrogated to that right. That person shall:

1. Do whatever is necessary to enable us to exercise our rights; and

2. Do nothing after loss to prejudice them.

However, our rights in this paragraph (**A.**) do not apply under Part **D.** against any person using **your covered auto** with your express or implied permission or other person having lawful possession and is not using a vehicle beyond the scope of the permission granted.

**B.** If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

**C.** We shall be entitled to recovery under Paragraphs **A.** and **B.** only after the person has been fully compensated for damages.

**D.** Our rights do not apply under paragraph **A.** with respect to coverage under Section **2.** of the definition of **uninsured motor vehicle** for Uninsured Motorists Coverage if we:

1. Have been given prompt written notice of a tentative settlement between an **insured** and the insurer of an **uninsured motor vehicle;** and

2. Fail to advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification:

1. That payment will be separate from any amount the **insured** is entitled to recover under the provisions of Uninsured Motorists Coverage; and

2. We also have a right to recover the advanced payments.

## TERMINATION

**A.** **Cancellation.** This policy may be canceled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

a. returning this policy to us; or

**b.** giving us advance written or verbal notice of the date cancellation is to take effect. We may waive the requirement the notice be in writing by confirming the date and time of cancellation to you in writing.

**2.** We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

    **a.** at least 10 days notice:

        **(1)** if cancellation is for nonpayment of premium; or

        **(2)** if notice is mailed during the first 60 days this policy is in effect and this is not a renewal policy; or

    **b.** at least 20 days notice in all other cases.

**3.** After this policy is in effect for 60 days, or if this is a renewal policy, we will cancel only:

    **a.** for nonpayment of premium; or

    **b.** for fraud or material misrepresentation concerning the policy or **insureds; or**

    **c.** if your driver's license or that of:

        **(1)** any driver who lives with you; or

        **(2)** any driver who customarily uses **your covered auto;**

    has been suspended or revoked during the policy period.

**B. Nonrenewal.** If we decide not to renew this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 30 days before the end of the policy period.

**C. Automatic Termination.** If we offer to renew and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal premium when due shall mean that you have not accepted our offer.

Coverage for **your covered auto** shall automatically terminate on the effective date of any other motor vehicle insurance policy covering that vehicle.

**D. Other Termination Provisions.**

**1.** If the law in effect in your state at the time this policy is issued or renewed:

    **a.** requires a longer notice period;

    **b.** requires a special form of or procedure for giving notice; or

    **c.** modifies any of the stated termination reasons;

we will comply with those requirements.

**2.** We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

**3.** If this policy is canceled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

**4.** The effective date of cancellation stated in the notice shall become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

**1.** The surviving spouse, civil partner or **domestic partner** if resident in the same household at the time of death. Coverage applies to the spouse, civil partner or **domestic partner** as if a named insured shown in the Declarations; and

**2.** The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use **your covered auto.**

**B.** Coverage will only be provided until the end of the policy period.

## TWO OR MORE AUTOS INSURED; TWO OR MORE AUTO POLICIES

If this policy insures two or more autos or if any other auto insurance policy issued to you by us applies to the same accident, the maximum limit of our liability shall not exceed the highest limit applicable to any one auto. In no event shall the limit of liability of two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to you or any insured.

## LOSS PAYABLE CLAUSE

As to the interest of the loss payee, this policy will remain in effect from the inception date and until ten days after proof of mailing that the cancellation notice has been mailed to the loss payee. When we pay the loss payee we shall, to the extent of payment, have the loss payee's rights of recovery.

## STORAGE COSTS

If you give us your consent, we may move the damaged property, at our expense, to reduce storage costs during the claims process. If you do not give us your consent, we will pay only the storage costs which would have resulted if we had moved the damaged property.

## NAMED DRIVER EXCLUSION

If there is an excluded driver under this policy, then we will not provide coverage for any claim arising from an accident or loss involving a motor vehicle being operated by that excluded person. This includes any claim for damages made against you or any family member or any other person or organization that is vicariously liable for an accident arising out of the operation of a motor vehicle by the excluded driver.

---

# ADDITIONAL COVERAGES

**AGREEMENT: WE WILL PROVIDE THE INSURANCE DESCRIBED IN EACH OF THE FOLLOWING ADDITIONAL COVERAGES ONLY IF INDICATED IN THE DECLARATIONS.**

---

### ROADSIDE ASSISTANCE COVERAGE CALL 1-877-ROAD-101 (1-877-762-3101)

**"Your covered auto"** as used in this endorsement means a private passenger vehicle, motor home or **trailer** owned by you and for which a specific premium is shown on the Declarations for this coverage.

The following coverages apply to each vehicle for which this coverage is shown on the Policy Declarations:

1. Each time **your covered auto** or any **non-owned auto** is disabled due to mechanical or electrical breakdown we will pay reasonable and necessary expenses for the use of an **authorized service provider** to tow or flatbed **your covered auto** or **non-owned auto** up to 15 miles or to the nearest qualified place where necessary repairs can be made during regular **business** hours.

2. Each time **your covered auto** or any **non-owned auto** is disabled requiring:

    a. Towing to dislodge the vehicle from its place of disablement within 100 feet of a public street or highway; or

    b. Labor, including change of tire, at the place of its breakdown; or

    c. Delivery of fuel, oil, water or other fluids (we do not pay the costs of these items); or

    d. Key lock-out services;

    we will cover up to one (1) hour of labor for the use of an **authorized service provider** for service at the place of disablement.

3. For policies with a 6 month policy term, coverage is limited to no more than two occurrences per vehicle plus an additional two occurrences per policy in a 6 month policy period for both coverages **1.** and **2.**, above.

4. For policies with an annual policy term, coverage is limited to no more than four occurrences per vehicle plus an additional four occurrences per policy in a 12 month policy period for both coverages **1.** and **2.** above.

    **Authorized service provider** means a service provider contracted by us providing, at no charge to you, roadside assistance as described and limited above.

    When service is provided by other than an **authorized service provider**, we will reimburse you only for reasonable charges as determined by us.

No deductible applies to this coverage.

---

### LOSS OF USE COVERAGE

The provisions and exclusions that apply to Part **D** — Coverage for Damage to Your Auto also apply to this coverage except as changed below:

When there is a loss to any vehicle described in the Declarations for which a specific premium charge indicates that Loss of Use Coverage is afforded, we will reimburse you for expenses you incur to rent a substitute vehicle.

This coverage applies only if:

1. The vehicle is withdrawn from use for more than 24 hours;

2. The loss is caused by **collision**, or is covered by the Comprehensive Coverage of this policy; and

3. The loss exceeds the appropriate **collision** or **comprehensive** deductible applying to the vehicle.

However, this coverage does not apply to losses caused by **collision** if Collision Coverage does not apply to the vehicle.

Our payment will be limited to that period of time reasonably required to repair or replace the vehicle. We will pay up to the amount per day and the

**** REPRINTED FROM THE FORMS LIBRARY ****

maximum shown for Loss of Use in the Declarations.

No deductible applies to this coverage.

---

## FULL SAFETY GLASS COVERAGE

We will pay under Comprehensive Coverage for the cost of repairing or replacing damaged **safety equipment** on **your covered auto** without a deductible. We will pay only if:

 1. The Declarations indicates that Comprehensive Coverage applies; and

 2. A specific premium charge for Full Safety Glass Coverage is shown in the Declarations for **your covered auto.**

**"Safety equipment",** as used in this coverage means the:

 1. Glass used in the windshield, doors and windows of **your covered auto;** and

 2. Glass, plastic or other material used in the lights of **your covered auto.**

Safeco Insurance
P.O. Box 515097
Los Angeles, CA 90051-5097

MARK P SKILLMAN
2304 Carriage Ln
Knoxville      TN 37920-2808

COPY

IN THE CHANCERY COURT FOR LOUDON COUNTY, TENNESSEE

| | |
|---|---|
| MARK SKILLMAN, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) Case No. *12379* |
| | ) |
| WALLACE TURNER, | ) |
| | ) |
| *Defendant.* | ) |

## COMPLAINT

The Plaintiff, Mark Skillman, files this complaint against the Defendant, Wallace Turner, and for his causes of action states the following:

1.  The Plaintiff is a natural person who resides in Knox County, Tennessee.

2.  The Defendant is a natural person who resides in Loudon County, Tennessee. The Defendant can be served with process at 1808 Riverview Road, Lenoir City, Tennessee 37771.

3.  The Defendant advertises himself as an automobile mechanic operating a business known as Turner Import Automotive.

4.  Over a period of several years, the Plaintiff brought numerous old and antique automobiles to the Defendant's business located at 1808 Riverview Road, Lenoir City, Tennessee. The Plaintiff delivered over 20 automobiles to the Defendant, including the automobiles described in the attached EXHIBIT A.

5.  The Defendant promised to work on the various automobiles from time to time and performed work on a few of the vehicles; however, he failed or refused to perform work on many of the automobiles, which remained on the Defendant's property.

6.  The Plaintiff paid for all of the work performed by the Defendant, usually in advance.

EXHIBIT
B

FILED 31 DAY OF Dec 2015
AT 11:46 A M
Stacy Vittetoe
LOUDON CO. CLERK & MASTER

7.    Eventually, the Defendant apparently stopped performing any work on the Plaintiff's automobiles, despite the Plaintiff's insistence that work be performed.

8.    In December of 2014, the Defendant sent a letter to the Plaintiff demanding that all of his automobiles be removed from the Defendant's property.  A true copy of the letter – incorrectly dated for "January 5, 2014" – is attached hereto as EXHIBIT B.

9.    In the December, 2014, letter, the Defendant for the first time demanded that the Plaintiff pay $5,000 for "storage and handling" of the Plaintiff's automobiles, even though the parties never agreed to any storage and handling fees, the Defendant never gave any prior notice of imposing storage and handling fees, and the Defendant had no legal authority to demand storage and handling fees.  The Defendant attempted to impose wrongful conditions on the return of the automobiles.

10.    The Plaintiff demanded the return of the automobiles.  On or about January 5, 2015, the Plaintiff attempted to remove his automobiles from the Defendant's property but the Defendant refused to allow the Plaintiff to recover the vehicles.

11.    After some demands and negotiations through counsel, the Plaintiff discovered in December of 2015 that the Defendant had unlawfully sold most of the Plaintiff's automobiles without the Plaintiff's permission or authority.  Although the Plaintiff still holds title to the automobiles, many of them have been sold and delivered unlawfully by the Defendant and are no longer in the Defendant's possession.

12.    Upon information and belief, the Defendant is now in possession of only five of the Plaintiff's automobiles, having sold the remaining vehicles to third persons.

13.    The Defendant has failed and refused to return the remaining five automobiles to the Plaintiff.

14. The automobiles entrusted by the Plaintiff to the Defendant had a total value in excess of $40,000.00.

15. The Defendant has unlawfully converted the Plaintiff's automobiles to his own use by selling the vehicles without the Plaintiff's permission or authority, and by keeping the profits of the sales, resulting in monetary loss to the Plaintiff.

16. The Defendant represented to the Plaintiff that the Defendant would work on the Plaintiff's automobiles and return them to the Plaintiff when they were repaired.

17. The Defendant's representations to the Plaintiff were false when made, were made with reckless disregard for the truth or were made negligently. Instead, upon information and belief, the Defendant did not intend to work on the automobiles but kept them for his own use and benefit.

18. The Plaintiff relied upon the Defendant's representations by delivering numerous automobiles to the Defendant and entrusting the vehicles in the care of the Defendant.

19. The Plaintiff has been damaged by the Defendant's fraudulent or negligent misrepresentations.

20. The Defendant's actions violate the Tennessee Consumer Protection Act (the "Act"), including Tenn. Code Ann. § 47-18-104(9) and (12). The Plaintiff is therefore entitled to the relief afforded by the Act in Tenn. Code Ann. § 47-18-109, including treble damages and attorneys' fees.

21. All conditions precedent to the initiation and maintenance of this action have been performed or have occurred.

WHEREFORE, the Plaintiffs pray that:

A.    process issue and be served upon the Defendant, requiring him to answer this complaint within the time allowed by law;

- 3 -

B.      the Plaintiff have and recover from the Defendant compensatory damages in the amount of at least $40,000 for conversion, fraudulent or negligent misrepresentations and violations of the Tennessee Consumer Protection Act, together with punitive damages, treble damages, consequential damages, prejudgment interest, reasonable attorneys' fees as provided by law and the costs of this action;

C.      the Court issue a writ of replevin for the Plaintiff to recover the remaining automobiles withheld by the Defendant;

D.      the Court tax the costs of this action, including discretionary costs, against the Defendant; and

E.      the Plaintiff have such other, further and general relief to which he is entitled.


GARRETT P. SWARTWOOD (BPR No. 21803)
*Attorney for Plaintiffs*

**LONG, RAGSDALE & WATERS, P. C.**
1111 Northshore Drive, Suite S-700
Knoxville, Tennessee  37919-4074
(865) 584-4040

- 4 -

## COST BOND

We, Mark Skillman, as Principal, and Long, Ragsdale & Waters, P.C., as Surety, are held and firmly bound unto the Clerk and Master, Loudon County Chancery Court, for the payment of all costs awarded against the Principal. To that end, we bind ourselves, our heirs, executors and administrators. The Principal is commencing legal proceedings in the Loudon County Chancery Court. If the Principal shall pay all costs that are adjudged against him, then this obligation is void. If the Principal fails to pay, then the Surety shall undertake to pay all costs adjudged against the Principal. Mandated at Tenn. Code Ann. § 20-12-120, *et seq.*

Principal:

Surety:
LONG, RAGSDALE & WATERS, P.C.

_____
MARK SKILLMAN

2304 Carriage Lane
Knoxville, Tennessee 37920

By: _____
As its: _____

1111 Northshore Drive, Suite S-700
Knoxville, Tennessee 37919

- 5 -

# EXHIBIT A

1950 Chevy Slant Back
1971 Lincoln Continental
1977 Lincoln Continental
1977 Lincoln Towcar
1977 Corvette
1978 BMW Motorcycle
1981 Jeep Scrambler
1985 Porsche 928S
1985 Mazda RX-7 GSL
1985 Mazda RX-7 GSL-SE
1984 Mazda RX-7 GSL-SE
1988 Mazda RX-7
1986 Pontiac Trans Am
1985 Mercedes 380-SE Modified TOA 500 SE
1987 Mercedes 560 SEL
1994 SAAB Convertible
1990 Buick Reatta
1994 Cadillac Limo
1988 Buick Regal
Chevy Lumina
1987 Gray Jeep Wagoneer
Late 80's or 90's White Jeep Wagoneer
Late 80's or 90's Blue Jeep Wagoneer
MGB, 3 Aluminium Engines, & Parts
1995 Chevy Monte Carlo

FILED 31 DAY OF Dec 20 15
AT 11:26 A M
Fred Chaney (un)
LOUDON CO. CLERK & MASTER

EXHIBIT
A

January 5, 2014,

Dear Mark,

I am writing this letter to inform you that you have till January 1, 2015 to remove all your vehicles from our property at 1808 Riverview Road in Lenoir City. You will need to bring a certified check for $5000.00 to cover storage and handling of your vehicles. We have ask you to do this in the past with no avail. If this is not taken care of by January 1, 2015 we will take it that you no longer want the vehicles and we are going to start disposing of them on January 2, 2015.

Sincerely,
Wally and Kay Turner

**EXHIBIT**

FILED 31 DAY OF Dec 2015
AT 11:26 A-M
Ted Chan
LOUDON CO. CLERK & MASTER

# AFFIDAVIT OF MARK P. SKILLMAN

STATE OF TENNESSEE )
COUNTY OF KNOX )

The undersigned Affiant, Mark P. Skillman, after being duly sworn according to law, deposes and says:

1. My name is Mark P. Skillman. I am over the age of 18 years and I am a resident and citizen of Knox County, Tennessee. I have personal knowledge of the matters stated herein and I would be competent to testify to the same in a court of law.

2. I am the insured under automobile policy numbers F1201091, F1207762, F1383150 and F2202904 issued by Safeco Insurance Company of Illinois.

3. I am also the owner of the motor vehicles identified in the declarations of the above-referenced policies as:

| | | |
|---|---|---|
| 1977 Chevrolet Corvette | Classic Car | 1Z37X7S426050 |
| 1990 Buick Reatta | Convertible | 1G4EC33C0LB907078 |
| 1984 Mazda RX7 | 2 Door | JM1FB3326E0836129 |
| 1995 Chevrolet Monte Carlo | 2 Door | 2G1WX12X1S9304378 |
| 1994 Saab 900S | Classic Car | YS3AK76E5R7003225 |

I will refer to these motor vehicles in this affidavit as the "Motor Vehicles."

4. In order to have various maintenance and repairs performed on the Motor Vehicles, I delivered them to an automobile repairman named Wallace Turner d/b/a Turner Imports Automotive, at 1808 Riverview Road, Lenoir City, Tennessee 37771.

5. In December of 2015, I discovered that the Motor Vehicles had been sold or otherwise disposed of by Mr. Turner without my permission. I did not authorize the sale and disposal of the Motor Vehicles and I did not receive any compensation or benefit.



6. On or about December 15, 2015, I notified the insurance agency through which I purchased the Safeco insurance policies and made claims as directed by the agent.

7. After speaking with a Safeco representative, I contacted Lieutenant Patrick Upton with the Loudon County Sheriff's Office located at 1260 Highway 11 West, Suite 1, Lenoir City, Tennessee 37771, (865) 986-4823, to report the theft. I notified Lt. Upton of the theft of the Motor Vehicles and asked that appropriate action be taken. Lt. Upton requested various documents and information from me as part of his investigation. I am not aware of any police report that may have been issued at this time or the status of the criminal investigation.

8. The 1977 Corvette had an agreed value in the policy declarations of $44,040. In my opinion, the cash value of the remaining Motor Vehicles pursuant to NADA Guides is:

| | |
|---|---|
| 1990 Buick Reatta | $ 4,650.00 |
| 1984 Mazda RX7 | $ 3,525.00 |
| 1995 Chevrolet Monte Carlo | $ 3,000.00 |
| 1994 Saab 900S | $ 3,475.00 |

FURTHER AFFIANT SAYETH NAUGHT.

_____
MARK P. SKILLMAN

Sworn to and subscribed before me
this ___ day of July, 2016.

_____
Notary Public
My Commission Expires:

STATE
OF
TENNESSEE
NOTARY
PUBLIC
KNOX COUNTY

- 2 -



**Long, Ragsdale & Waters, P.C.**

ATTORNEYS AT LAW

David Wilson Long
Dennis B. Ragsdale
John B. Waters III
J. Michael Ivens
R. Louis Crossley, Jr.†
C. Paul Harrison
J. Randolph Miller
Garrett P. Swartwood

Jennifer Milligan Swindle*
Lee A. Popkin
Taylor D. Forrester
Kyle A. Baisley
Alexander O. Waters

Retired
John B. Waters, Jr.

April 10, 2017

Safeco Insurance
P.O. Box 515097
Los Angeles, California 90051

VIA CERTIFIED MAIL RETURN
RECEIPT REQUESTED

Safeco Insurance
310 E. 96th Street
Indianapolis, Indiana 46240
Attn: Gregory Gude
Email: Gregory.Gude@safeco.com

VIA CERTIFIED MAIL RETURN
RECEIPT REQUESTED AND
ELECTRONIC MAIL

**Re:   Claim of Mark P. Skillman; Claim Nos. 493377316038, 857277316038,
173177316038 and 630277316038**

Dear Sir or Madam:

As you know, this firm represents Mark P. Skillman in connection with the above-referenced claims (collectively, the "Claims") under policies of insurance with Safeco Insurance Company of Illinois ("Safeco") for thefts of various motor vehicles.

Let this letter serve as formal notice pursuant to Tennessee Code Annotated § 56-7-105 of Mr. Skillman's intent to bring a bad-faith claim against Safeco if the forgoing Claims are not paid in full within the next sixty (60) days from receipt of this letter. Rejection of this demand will be deemed bad faith.

We understand Mr. Skillman initially made the Claims back in December of 2015, but Safeco failed to timely accept or deny the Claims. On or about May 19, 2016, our firm sent a letter to Safeco demanding that it, in good faith, honor its obligations under the policies of insurance and make prompt payment of the claims. In said letter, we noted that it may become necessary to initiate legal proceedings for declaratory relief and for relief for the bad faith handling of the Claims. Safeco still failed to accept or deny the Claims.

Between May 2016 and September 2016, we traded correspondence and information with Safeco regarding the vehicles and the Claims, including payout letters from Mr. Gregory Gude of Safeco which listed the "Total Payout for Total Loss" for the five (5) vehicles, as summarized below:

1111 N. Northshore Drive, Suite S-700  Knoxville, Tennessee 37919-4074
865 584 4040   865 584 6084 fax   www.lrwlaw.com

†T.S.C. Rule 31 Civil Mediator   *Also admitted in New York

**EXHIBIT D**

| Year / Make / Model | Class | Total Payoff for Total Loss |
| --- | --- | --- |
| 1977 Chevrolet Corvette | Classic Car | $ 43,940.00 |
| 1990 Buick Reatta | Convertible | $ 4,837.97 |
| 1995 Chevrolet Monte Carlo | 2 Door | $ 1,299.39 |
| 1994 Saab 900S | Classic Car | $ 8,964.00 |
| 1984 Mazda RX7 | 2 Door | $ 2,798.01 |

On September 1, 2016, we received an email from Mr. Gude that "Safeco will release payments for the 1977 Chevy Corvette, 1990 Buick Reatta, 1994 Saab 900, 1984 Mazda RX7, and 1995 Chevy Monte Carlo, to the listed named owners on the original signed title's once they are received." In a letter dated September 2, 2016, our firm provided Safeco with original signed titles and again requested payment on the Claims, as Safeco has promised.

Following two more months, we received a letter from Safeco dated November 8, 2016 denying the Claims even though Safeco agreed to release payment upon receipt of the titles.

As such, our firm demands payment on behalf of Mr. Skillman and any refusal to pay said Claims will be deemed as bad faith. Any further denial will be met with the bad-faith claim provision of Tennessee Code Annotated § 56-7-105 as well as other available relief provided by law.

Enclosed for reference are the following: (a) Letter from our firm dated May 19, 2016, including an affidavit from Mr. Skillman reflecting the theft of the vehicles and the notification of law enforcement; (b) Payout letters dated August 3, 2016 from Mr. Gude; (c) September 1, 2016 email from Mr. Gude; (d) Letter from our firm dated September 2, 2016; (e) Letter from Safeco dated November 8, 2016; and (f) copies of Mr. Skillman's Declarations for each claimed vehicle.

We would appreciate it if you would make the check or checks for the payment of the Claims payable to Mark Skillman but have them delivered to us at the address below as soon as possible.

We look forward to hearing from you in the very near future.

Sincerely,

LONG, RAGSDALE & WATERS, P.C.

By:

Alexander O. Waters

Enclosures

cc:    Mark Skillman
       Danelle Webb                    (via email to danelle.webb@safeco.com)
       Lejla Smajlovic                 (via email to lejla.smajlovic@safeco.com)
       Akers Insurance Agency          (via First Class U.S. Mail to P.O. Box 12718, Knoxville, Tennessee 37912)



David Wilson Long
Dennis B. Ragsdale
John B. Waters III
J. Michael Ivens
R. Louis Crossley, Jr.†
C. Paul Harrison
J. Randolph Miller
Garrett P. Swartwood

**Long, Ragsdale & Waters, P.C.**
ATTORNEYS AT LAW

Jennifer Milligan Swindle*
Lee A. Popkin
Taylor D. Forrester
Kyle A. Baisley
Alexander O. Waters

Of Counsel
John B. Waters, Jr.

May 19, 2016

Safeco Insurance
P.O. Box 515097
Los Angeles, CA 90051

**Re:** **CLAIM OF MARK P. SKILLMAN: AUTOMOBILE POLICY NUMBERS F1201091, F1207762, F1383150 AND F2202904**

Dear Sir or Madam:

This firm represents Mark P. Skillman in connection with his claims under the above-referenced policies of insurance for thefts of various motor vehicles. Mr. Skillman is the owner of automobile insurance policies that cover several stolen motor vehicles. We understand he made claims back in December of 2015. He has received no response or payment of those claims. The purpose of this letter is to demand that Safeco in good faith honor its obligations under the policies of insurance and make prompt payment of the claims.

Mr. Skillman is the owner of four motor vehicles, identified as follows:

| | | |
|---|---|---|
| 1977 Chevrolet Corvette | Classic Car | 1Z37X7S426050 |
| 1990 Buick Reatta | Convertible | 1G4EC33C0LB907078 |
| 1984 Mazda RX7 | 2 Door | JM1FB3326E0836129 |
| 1995 Chevrolet Monte Carlo | 2 Door | 2G1WX12X1S9304378 |
| 1994 Saab 900S | Classic Car | YS3AK76E5R7003225 |

These vehicles are covered by the subject policies as reflected in the Declarations enclosed herewith. The policies provide comprehensive coverage for the vehicles.

Mr. Skillman delivered the subject vehicles to an automobile repairman named Wallace Turner, d/b/a Turner Imports Automotive, at 1808 Riverview Road, Lenoir City, Tennessee 37771. In December of 2015, Mr. Skillman discovered that the vehicles had been stolen by Mr. Turner, who apparently sold or disposed of the vehicles without Mr. Skillman's permission. Mr. Skillman promptly notified your insurance agent and made claims upon Safeco under the policies. Following discussions with a representative of Safeco, Mr. Skillman also notified local

law enforcement. An affidavit from Mr. Skillman reflecting the theft of the vehicles and the notification of law enforcement is also enclosed. If you need any further information at this time, please let us know as soon as possible.

As you know, the policies of insurance in Part D cover comprehensive loss of the vehicles, including loss caused by theft. Therefore, we demand that Safeco promptly acknowledge receipt and acceptance of the claims made by Mr. Skillman. We also demand that Safeco promptly pay the subject claims. The 1977 Chevrolet Corvette has an agreed value of $44,040. Mr. Skillman should be paid the actual cash value of the other vehicles. His enclosed affidavit includes his estimate of these values collectively totaling $14,650. Payment of these claims should be remitted directly to Mr. Skillman at 2304 Carriage Lane, Knoxville, Tennessee 37920.

If we do not receive any response or payment from Safeco by June 10, 2016, it may become necessary to initiate legal proceedings for declaratory relief and for relief for the bad faith handling of these claims.

We look forward to hearing from you in the very near future.

Sincerely,

LONG, RAGSDALE & WATERS, P.C.

By:
    Garrett P. Swartwood

cc:   Mark Skillman
      Stacy Croocks                    (via email to stacy.croocks@safeco.com)
      Akers Insurance Agency           (via First Class U.S. Mail to P.O. Box 12718,
                                       Knoxville, Tennessee 37912)

# AFFIDAVIT OF MARK P. SKILLMAN

STATE OF TENNESSEE )
COUNTY OF KNOX )

The undersigned Affiant, Mark P. Skillman, after being duly sworn according to law, deposes and says:

1. My name is Mark P. Skillman. I am over the age of 18 years and I am a resident and citizen of Knox County, Tennessee. I have personal knowledge of the matters stated herein and I would be competent to testify to the same in a court of law.

2. I am the insured under automobile policy numbers F1201091, F1207762, F1383150 and F2202904 issued by Safeco Insurance Company of Illinois.

3. I am also the owner of the motor vehicles identified in the declarations of the above-referenced policies as:

| | | |
|---|---|---|
| 1977 Chevrolet Corvette | Classic Car | 1Z37X7S426050 |
| 1990 Buick Reatta | Convertible | 1G4EC33C0LB907078 |
| 1984 Mazda RX7 | 2 Door | JM1FB3326E0836129 |
| 1995 Chevrolet Monte Carlo | 2 Door | 2G1WX12X1S9304378 |
| 1994 Saab 900S | Classic Car | YS3AK76E5R7003225 |

I will refer to these motor vehicles in this affidavit as the "Motor Vehicles."

4. In order to have various maintenance and repairs performed on the Motor Vehicles, I delivered them to an automobile repairman named Wallace Turner d/b/a Turner Imports Automotive, at 1808 Riverview Road, Lenoir City, Tennessee 37771.

5. In December of 2015, I discovered that the Motor Vehicles had been sold or otherwise disposed of by Mr. Turner without my permission. I did not authorize the sale and disposal of the Motor Vehicles and I did not receive any compensation or benefit.

6.      On or about December 15, 2015, I notified the insurance agency through which I purchased the Safeco insurance policies and made claims as directed by the agent.

7.      After speaking with a Safeco representative, I contacted Lieutenant Patrick Upton with the Loudon County Sheriff's Office located at 1260 Highway 11 West, Suite 1, Lenoir City, Tennessee 37771, (865) 986-4823, to report the theft. I notified Lt. Upton of the theft of the Motor Vehicles and asked that appropriate action be taken. Lt. Upton requested various documents and information from me as part of his investigation. I am not aware of any police report that may have been issued at this time or the status of the criminal investigation.

8.      The 1977 Corvette had an agreed value in the policy declarations of $44,040. In my opinion, the cash value of the remaining Motor Vehicles pursuant to NADA Guides is:

| | |
|---|---|
| 1990 Buick Reatta | $ 4,650.00 |
| 1984 Mazda RX7 | $ 3,525.00 |
| 1995 Chevrolet Monte Carlo | $ 3,000.00 |
| 1994 Saab 900S | $ 3,475.00 |

FURTHER AFFIANT SAYETH NAUGHT.


_____
MARK P. SKILLMAN


Sworn to and subscribed before me
this ___19th___ day of July, 2016.

_____
Notary Public
My Commission Expires

-2-


**Safeco Insurance**™

A Liberty Mutual Company

Safeco Insurance Company of Illinois

Mailing Address:
310 E. 96TH ST
INDIANAPOLIS, IN 46240

Phone:   (800) 332-3226
            (317) 660-3234
Fax:     (888) 268-8840

August 3, 2016

Long, Ragsdale & Waters Pc
1111 Northshore Drive
Suite S-700
Knoxville, TN 37919

| | |
|---|---|
| Claim Number: | 857277316038 |
| Insured Name: | Mark S Skillman |
| Date of Loss: | December 8, 2015 |
| Policy Number: | F1383150 |
| Underwriting Company: | Safeco Insurance Company of Illinois |

To Whom It May Concern:

**Please take a moment to read this entire letter as it will fully explain how your total loss and the sale of the salvage will be handled. It is important that you understand this process so that we are able to pay your claim as quickly as possible.**

The value of your 1995 CHEV MONTE CARLO Z34 2G1WX12X1S9304378 was determined based on similar vehicles for sale in your local market, considering pre-accident condition, accessories, options, and mileage.

| | **Company Retains** |
|---|---|
| Actual Cash Value: | $1,269.00 |
| Applicable Taxes/Fees: | $130.39 |
| Less Deductible: | - $100.00 |
| Total Payout for Total Loss: | $1,299.39 |

Upon receipt of your properly signed TITLE and verification that your vehicle has arrived at our salvage yard, we will send your payment. **Cashing this check does not release any portion of your claim.** ***Please reference the enclosed title instructions.**

If your vehicle is currently accruing storage costs at an auto repair facility or tow yard, please be advised that our obligation to pay for storage costs will end as of January 10, 2016. Any costs incurred after this date will be your responsibility.

Please contact your agent to discuss the removal of this vehicle from your policy. Your agent is your best resource for policy issues. They can answer your questions about how this claim may affect your policy.

CA2059 08/16

<u>In order to process the salvage of your vehicle, we need the following from you:</u>

**Title:** Please make sure if a "Lien Holder" is listed on the title that they have released their interest to the vehicle either on the title itself or on a separate document. Please forward any such documents with your title. We are enclosing instructions on how to sign a title from your specific state. Please remember that a title is a legal document and the state will not process a title that has been altered in any way. This means **no scratch-outs, no "white-out" and do not write any unnecessary information anywhere else on the title. Please read this information carefully as your payment will be delayed if this legal document is not signed properly.** Titles not signed correctly will only delay the process and in most instances, delay the processing of your payment. If you have any questions prior to signing the title, please call and I will be happy to help you out.

Please remove the license plates from the vehicle. The license plates can be transferred to a new vehicle or they will need to be surrendered to the Department of Motor vehicles.

Please reference the example title on this letter. Payment cannot be issued until Safeco has possession of your vehicle and the properly signed title. Please have the registered owner sign the original title and mail it **with any spare keys** to:

SAFECO INSURANCE
310 E. 96th ST
INDIANAPOLIS, IN 46240
ATTENTION: GREG GUDE

Please let me know if you have any questions or concerns.

CA2069 06/16

Tennessee Example Title (Reverse Side)



**Keys:** Please send any spare keys with your paperwork.

CA2059 06/16

Sincerely,

GREGORY GUDE
(317) 660-3234
(800) 332-3226 Fax: (888) 268-8840
GREGORY.GUDE@SAFECO.COM

CA2059 06/16



Safeco Insurance™

A Liberty Mutual Company

Safeco Insurance Company of Illinois

Mailing Address:
310 E. 96TH ST
INDIANAPOLIS, IN 46240

Phone:   (800) 332-3226
           (317) 660-3234
Fax:     (888) 268-8840

August 3, 2016

Mark S Skillman
2304 Carriage Ln
Knoxville, TN 37920-2808

| | |
|---|---|
| Claim Number: | 857277316038 |
| Insured Name: | Mark S Skillman |
| Date of Loss: | December 8, 2015 |
| Policy Number: | F1383150 |
| Underwriting Company: | Safeco Insurance Company of Illinois |

Dear Mr. Mark S Skillman:

**Please take a moment to read this entire letter as it will fully explain how your total loss and the sale of the salvage will be handled. It is important that you understand this process so that we are able to pay your claim as quickly as possible.**

The value of your 1984 MAZD RX7 13B JM1FB3326E0836129 was determined based on similar vehicles for sale in your local market, considering pre-accident condition, accessories, options, and mileage.

| | Company Retains |
|---|---|
| Actual Cash Value: | $2,636.00 |
| Applicable Taxes/Fees: | $262.01 |
| Less Deductible: | - $100.00 |
| Total Payout for Total Loss: | $2,798.01 |

Upon receipt of your properly signed TITLE and verification that your vehicle has arrived at our salvage yard, we will send your payment. <u>Cashing this check does not release any portion of your claim.</u> ***Please reference the enclosed title instructions.

If your vehicle is <u>currently accruing storage costs</u> at an auto repair facility or tow yard, please be advised that our obligation to pay for <u>storage costs will end as of January 10, 2016</u>. Any costs incurred after this date will be your responsibility.

Please contact your agent to discuss the removal of this vehicle from your policy. Your agent is your best resource for policy issues. They can answer your questions about how this claim may affect your policy.

CA2059 06/16

<u>In order to process the salvage of your vehicle, we need the following from you:</u>

**Title:.** Please make sure if a "Lien Holder" is listed on the title that they have released their interest to the vehicle either on the title itself or on a separate document. Please forward any such documents with your title. We are enclosing instructions on how to sign a title from your specific state. Please remember that a title is a legal document and the state will not process a title that has been altered in any way. This means **no scratch-outs, no "white-out" and do not write any unnecessary information anywhere else on the title. Please read this information carefully as your payment will be delayed if this legal document is not signed properly.** Titles not signed correctly will only delay the process and in most instances, delay the processing of your payment. If you have any questions prior to signing the title, please call and I will be happy to help you out.

Please remove the license plates from the vehicle. The license plates can be transferred to a new vehicle or they will need to be surrendered to the Department of Motor vehicles.

Please reference the example title on this letter. Payment cannot be issued until Safeco has possession of your vehicle and the properly signed title. Please have the registered owner sign the original title and mail it with any spare keys to:

SAFECO INSURANCE
310 E. 96TH ST
INDIANAPOLIS, IN 46240
ATTENTION: GREG GUDE

Please let me know if you have any questions or concerns.

CA2059 06/16

**Tennessee Example Title (Reverse Side)**

*[The reverse side of the title document is too faded/degraded to read reliably. Visible labels include:]*

**Registered Owner Signs Here**     **Co-Owner Signs Here (If Applicable)**

Please Leave Blank

**Keys:** Please send any spare keys with your paperwork.

CA2059 08/16

Sincerely,

GREGORY GUDE
(317) 660-3234
(800) 332-3226 Fax: (888) 268-8840
GREGORY.GUDE@SAFECO.COM

CA2059 08/18



**Safeco** Insurance™

A Liberty Mutual Company

Safeco Insurance Company of Illinois

Mailing Address:
310 E. 96TH ST
INDIANAPOLIS, IN 46240

Phone:   (800) 332-3226
         (317) 660-3234
Fax:     (888) 268-8840

August 3, 2016

Long, Ragsdale & Waters Pc
1111 Northshore Drive
Suite S-700
Knoxville, TN 37919

| | |
|---|---|
| Claim Number: | 630277316038 |
| Insured Name: | Mark P Skillman |
| Date of Loss: | December 8, 2015 |
| Policy Number: | F1201091 |
| Underwriting Company: | Safeco Insurance Company of Illinois |

To Whom It May Concern:

**Please take a moment to read this entire letter as it will fully explain how your total loss and the sale of the salvage will be handled. It is important that you understand this process so that we are able to pay your claim as quickly as possible.**

Thank you for taking the time to discuss your loss with us. The value of your 1977 CHEV CORVETTE 1Z37X7S426050 was determined based on similar vehicles for sale in your local market, considering pre-accident condition, accessories, options, and mileage. Per our conversation, we discussed the following:

| | **Company Retains** |
|---|---|
| Actual Cash Value: | $44,040.00 |
| Less Deductible: | - $100.00 |
| Total Payout for Total Loss: | $43,940.00 |

Upon receipt of your properly signed TITLE and verification that your vehicle has arrived at our salvage yard, we will send your payment. <u>Cashing this check does not release any portion of your claim.</u> ***Please reference the enclosed title instructions.**

If your vehicle is <u>currently accruing storage costs</u> at an auto repair facility or tow yard, please be advised that our obligation to pay for <u>storage costs will end as of January 10, 2016.</u> Any costs incurred after this date will be your responsibility.

Please contact your agent to discuss the removal of this vehicle from your policy. Your agent is your best resource for policy issues. They can answer your questions about how this claim may affect your policy.

CA2069 08/16

In order to process the salvage of your vehicle, we need the following from you:

**Title:** Please make sure if a "Lien Holder" is listed on the title that they have released their interest to the vehicle either on the title itself or on a separate document. Please forward any such documents with your title. We are enclosing instructions on how to sign a title from your specific state. Please remember that a title is a legal document and the state will not process a title that has been altered in any way. This means **no scratch-outs, no "white-out" and do not write any unnecessary information anywhere else on the title. Please read this information carefully as your payment will be delayed if this legal document is not signed properly.** Titles not signed correctly will only delay the process and in most instances, delay the processing of your payment. If you have any questions prior to signing the title, please call and I will be happy to help you out.

Please remove the license plates from the vehicle. The license plates can be transferred to a new vehicle or they will need to be surrendered to the Department of Motor vehicles.

Please reference the example title on this letter. Payment cannot be issued until Safeco has possession of your vehicle and the properly signed title. Please have the registered owner sign the original title and mail it with any spare keys to:

SAFECO INSURANCE
310 E. 96TH ST
INDIANAPOLIS, IN 46240
ATTENTION: GREG GUDE

Please let me know if you have any questions or concerns.

CA2059 08/16

**Tennessee Example Title (Reverse Side)**

ASSIGNMENT OF TITLE BY REGISTERED OWNER

*Registered Owner Signs Here* — *Co-Owner Signs Here (if applicable)*

**Please Leave Blank**

FIRST REASSIGNMENT BY LICENSED DEALER

SECOND REASSIGNMENT BY LICENSED DEALER

THIRD REASSIGNMENT BY LICENSED DEALER

LIEN HOLDER OF THE RECORDED AND SHOWN ON NEW TITLE
1ST LIEN IN FAVOR OF:
NAME & ADDRESS

**Keys:** Please send any spare keys with your paperwork.

CA2059 08/16

Page 4
Claim Number 630277316038

Sincerely,

GREGORY GUDE
(317) 660-3234
(800) 332-3226 Fax: (888) 268-8840
GREGORY.GUDE@SAFECO.COM

CA2059 06/16



Safeco Insurance™

A Liberty Mutual Company

Safeco Insurance Company of Illinois

Mailing Address:
310 E. 96TH ST
INDIANAPOLIS, IN 46240

Phone:   (800) 332-3226
         (317) 660-3234
Fax:     (888) 268-8840

August 3, 2016

Long, Ragsdale & Water Pc
1111 Northshore Drive
Suite S-700
Knoxville, TN 37919

| | |
|---|---|
| Claim Number: | 493377316038 |
| Insured Name: | Mark P Skillman |
| Date of Loss: | December 8, 2015 |
| Policy Number: | F2202904 |
| Underwriting Company: | Safeco Insurance Company of Illinois |

To Whom It May Concern:

**Please take a moment to read this entire letter as it will fully explain how your total loss and the sale of the salvage will be handled. It is important that you understand this process so that we are able to pay your claim as quickly as possible.**

The value of your 1994 SAA 900 S YS3AK76E5R7003225 was determined based on similar vehicles for sale in your local market, considering pre-accident condition, accessories, options, and mileage.

| | **Company Retains** |
|---|---|
| Actual Cash Value: | $9,051.00 |
| Applicable Taxes/Fees: | $13.00 |
| Less Deductible: | - $100.00 |
| Total Payout for Total Loss: | $8,964.00 |

Upon receipt of your properly signed TITLE and verification that your vehicle has arrived at our salvage yard, we will send your payment. <u>Cashing this check does not release any portion of your claim.</u> ***Please reference the enclosed title instructions.

If your vehicle is <u>currently accruing storage costs</u> at an auto repair facility or tow yard, please be advised that our obligation to pay for <u>storage costs will end as of January 10, 2016.</u> Any costs incurred after this date will be your responsibility.

Please contact your agent to discuss the removal of this vehicle from your policy. Your agent is your best resource for policy issues. They can answer your questions about how this claim may affect your policy.

CA2059 08/16

<u>In order to process the salvage of your vehicle, we need the following from you:</u>

<u>Title:</u> Please make sure if a "Lien Holder" is listed on the title that they have released their interest to the vehicle either on the title itself or on a separate document. Please forward any such documents with your title. We are enclosing instructions on how to sign a title from your specific state. Please remember that a title is a legal document and the state will not process a title that has been altered in any way. This means **no scratch-outs, no "white-out" and do not write any unnecessary information anywhere else on the title. Please read this information carefully as your payment will be delayed if this legal document is not signed properly.** Titles not signed correctly will only delay the process and in most instances, delay the processing of your payment. If you have any questions prior to signing the title, please call and I will be happy to help you out.

Please remove the license plates from the vehicle. The license plates can be transferred to a new vehicle or they will need to be surrendered to the Department of Motor vehicles.

Please reference the example title on this letter. Payment cannot be issued until Safeco has possession of your vehicle and the properly signed title. Please have the registered owner sign the original title and mail it with any spare keys to:

**SAFECO INSURANCE
310 E. 96TH ST
INDIANAPOLIS, IN 46240
ATTENTION: GREG GUDE**

Please let me know if you have any questions or concerns.

## Tennessee Example Title (Reverse Side)

_[The body of this form is illegible due to image quality.]_

**Keys:** Please send any spare keys with your paperwork.

CA2059 06/16

Page 4
Claim Number 493377316038

Sincerely,

GREGORY GUDE
(317) 660-3234
(800) 332-3226 Fax: (888) 268-8840
GREGORY.GUDE@SAFECO.COM

CA2059 05/16



Safeco Insurance Company of Illinois

**Safeco Insurance**™

A Liberty Mutual Company

Mailing Address:
310 E. 96TH ST
INDIANAPOLIS, IN 46240

Phone:   (800) 332-3226
         (317) 660-3234
Fax:     (888) 268-8840

August 3, 2016

Mark P Skillman
2304 Carriage Ln
Knoxville, TN 37920-2808

| | |
|---|---|
| Claim Number: | 173177316038 |
| Insured Name: | Mark P Skillman |
| Date of Loss: | December 8, 2015 |
| Policy Number: | F1207762 |
| Underwriting Company: | Safeco Insurance Company of Illinois |

Dear Mr. Mark P Skillman:

**Please take a moment to read this entire letter as it will fully explain how your total loss and the sale of the salvage will be handled. It is important that you understand this process so that we are able to pay your claim as quickly as possible.**

Thank you for taking the time to discuss your loss with us. The value of your 1990 BUIC REATTA 1G4EC33C0LB907078 was determined based on similar vehicles for sale in your local market, considering pre-accident condition, accessories, options, and mileage. Per our conversation, we discussed the following:

| | **Company Retains** |
|---|---|
| Actual Cash Value: | $4,528.00 |
| Applicable Taxes/Fees: | $409.97 |
| Less Deductible: | - $100.00 |
| Total Payout for Total Loss: | $4,837.97 |

Upon receipt of your properly signed TITLE and verification that your vehicle has arrived at our salvage yard, we will send your payment. Cashing this check does not release any portion of your claim. ***Please reference the enclosed title instructions.

If your vehicle is currently accruing storage costs at an auto repair facility or tow yard, please be advised that our obligation to pay for storage costs will end as of January 10, 2016. Any costs incurred after this date will be your responsibility.

Please contact your agent to discuss the removal of this vehicle from your policy. Your agent is your best resource for policy issues. They can answer your questions about how this claim may affect your policy.

CA2089 08/16

In order to process the salvage of your vehicle, we need the following from you:

**Title:**. Please make sure if a "Lien Holder" is listed on the title that they have released their interest to the vehicle either on the title itself or on a separate document. Please forward any such documents with your title. We are enclosing instructions on how to sign a title from your specific state. Please remember that a title is a legal document and the state will not process a title that has been altered in any way. This means **no scratch-outs, no "white-out" and do not write any unnecessary information anywhere else on the title. Please read this information carefully as your payment will be delayed if this legal document is not signed properly.** Titles not signed correctly will only delay the process and in most instances, delay the processing of your payment. If you have any questions prior to signing the title, please call and I will be happy to help you out.

Please remove the license plates from the vehicle. The license plates can be transferred to a new vehicle or they will need to be surrendered to the Department of Motor vehicles.

Please reference the example title on this letter. Payment cannot be issued until Safeco has possession of your vehicle and the properly signed title. Please have the registered owner sign the original title and mail it with any spare keys to:

SAFECO INSURANCE
310 E. 96TH ST
INDIANAPOLIS, IN 46240
ATTENTION: GREG GUDE

Please let me know if you have any questions or concerns.

Page 3
Claim Number 173177316038

## Tennessee Example Title (Reverse Side)

ASSIGNMENT OF TITLE BY REGISTERED OWNER

Registered Owner Signs Here — Co-Owner Signs Here (if applicable)

Please Leave Blank

FIRST RE-ASSIGNMENT BY LICENSED DEALER

SECOND RE-ASSIGNMENT BY LICENSED DEALER

THIRD RE-ASSIGNMENT BY LICENSED DEALER

LIEN HOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:
1ST LIEN IN FAVOR OF
NAME & ADDRESS

ANY ALTERATION OR ERASURE VOIDS THIS TITLE

**Keys:** Please send any spare keys with your paperwork.

CA2059 06/16

Sincerely,

*[signature]*

GREGORY GUDE
(317) 660-3234
(800) 332-3226 Fax: (888) 268-8840
GREGORY.GUDE@SAFECO.COM

## Garrett Swartwood

| | |
|---|---|
| **From:** | Gude, Gregory <GREGORY.GUDE@Safeco.com> |
| **Sent:** | Thursday, September 01, 2016 3:06 PM |
| **To:** | Garrett Swartwood |
| **Subject:** | RE: Mark Skillman Claim No. 857277316038 |

Mr. Swartwood,

Safeco will release payments for the 1977 Chevy Corvette, 1990 Buick Reatta, 1994 Saab 900, 1984 Mazda RX7, and 1995 Chevy Monte Carlo, to the listed named owners on the original signed title's once they are received.

**From:** Garrett Swartwood [mailto:GSwartwood@lrwlaw.com]
**Sent:** Thursday, September 01, 2016 2:03 PM
**To:** Gude, Gregory <GREGORY.GUDE@Safeco.com>
**Subject:** FW: Mark Skillman Claim No. 857277316038

Greg:

I meant to attached a copy of one of the letters we received from Safeco to my email below. Attached is the copy for your reference.

Sincerely,

*Garrett P. Swartwood*
Long, Ragsdale & Waters, P.C.
1111 Northshore Drive, Suite S-700
Knoxville, TN 37919
(865) 584-4040
gswartwood@lrwlaw.com
http://www.lrwlaw.com/garrett-p-swartwood/

**From:** Garrett Swartwood
**Sent:** Thursday, September 01, 2016 1:55 PM
**To:** 'gregory.gude@safeco.com' <gregory.gude@safeco.com>
**Subject:** Mark Skillman Claim No. 857277316038

Greg:

I just left you a telephone message and wanted to follow-up by email. We received letters several weeks ago from Safeco concerning the above-referenced claim. As you know, this claim involves stolen vehicles owned by Mr. Mark Skillman. The letters describe the requirements for payment of the claim. One of the requirements is that "your vehicle has arrived at our salvage yard." The letters expressly state: "Payment cannot be issued until Safeco has possession of your vehicle . . . ." Of course, since the vehicles were stolen it is not possible for Mr. Skillman to deliver the vehicles to Safeco for salvage. The vehicles were stolen. I assume the references in the letters to the vehicles being delivered to Safeco was in error. Please contact me as soon as possible to rectify this matter so that payment may be promptly issued to Mr. Skillman.

Sincerely,

1

*Garrett P. Swartwood*
Long, Ragsdale & Waters, P.C.
1111 Northshore Drive, Suite S-700
Knoxville, TN 37919
(865) 584-4040
gswartwood@lrwlaw.com
http://www.lrwlaw.com/garrett-p-swartwood/

FILE COPY 

## Long, Ragsdale & Waters, P.C.
### ATTORNEYS AT LAW

David Wilson Long
Dennis B. Ragsdale
John B. Waters III
J. Michael Ivens
R. Louis Crossley, Jr.†
C. Paul Harrison
J. Randolph Miller
Garrett P. Swartwood

Jennifer Milligan Swindle*
Lee A. Popkin
Taylor D. Forrester
Kyle A. Baisley
Alexander O. Waters

Of Counsel
John B. Waters, Jr.

September 2, 2016

**VIA FEDERAL EXPRESS**
**OVERNIGHT DELIVERY**

Safeco Insurance
310 E. 96th Street
Indianapolis, Indiana 46240
Attention: Greg Gude

Ref: 6305-007   Date: 02Sep16   SHIPPING:   18.78
Dep:            Wgt: 1.00 LBS   SPECIAL:     0.47
                                HANDLING:    0.00
                DV:    0.00 TOTAL:           19.25
Svcs: STANDARD OVERNIGHT
TRCK: 6317 9744 7728

Re:  **Claim of Mark P. Skillman; Claim Nos. 493377316038, 857277316038, 173177316038 and 630277316038**

Dear Mr. Gude:

As you know, this firm represents Mark Skillman in connection with the above-referenced claims. Following our telephone conversation yesterday, please find enclosed original signed titles for four (4) stolen vehicles that are the subject these claims. The titles have been signed by Mr. Skillman pursuant to the letters dated August 3, 2016, that we received from Safeco. As we discussed, the subject vehicles cannot be delivered to Safeco for salvage because they were stolen. Each enclosed title is accompanied by a copy of the respective Safeco letter from August 3. These titles relate to the following vehicles:

    1994 Saab 900 (VIN YS3AK76E5R7003225)
    1995 Chevrolet Monte Carlo (VIN 2G1WX12X1S9304378)
    1990 Buick Reatta (VIN 1G4EC33C0LB907078)
    1977 Chevrolet Corvette (VIN 1Z37X7S426050)

We do not yet have the signed title for a fifth claim involving a 1984 Mazda RX7.

We would appreciate it if you would make the check or checks for the payment of these claims payable to Mark Skillman but have them delivered to us at the address below as soon as possible.

Thank you and if you have any questions, please do not hesitate to give me a call.

Sincerely,

LONG, RAGSDALE & WATERS, P.C.

By: _____
       Garrett P. Swartwood

Enclosures as stated above
cc:   Mark Skillman

1111 N. Northshore Drive, Suite S-700  Knoxville, Tennessee 37919-4074
865 584 4040  865 584 6084 fax  www.lrwlaw.com

† T.S.C. Rule 31 Civil Mediator  *Also admitted in New York
Case 3:18-cv-00176-HSM-DCP   Document 1-1   Filed 05/07/18   Page 76 of 109   PageID #: 84

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | MODEL | BODY TYPE | TITLE NUMBER |
|---|---|---|---|---|---|
| YS3AK76E5R700322 | 1994 | SAA | 90S | CV | 98131230 |

TXOORE/wk121/7

MARK P SKILLMAN
2304 CARRIAGE LANE
KNOXVILLE    TN 37920

STATE OF TENNESSEE
DEPARTMENT OF REVENUE

## STATE OF TENNESSEE

### CERTIFICATE OF TITLE

VERIFY THE AUTHENTICITY OF THIS MULTI-TONE DOCUMENT, BACKGROUND AREA CHANGES COLOR GRADUALLY FROM TOP TO BOTTOM.

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | MODEL | BODY TYPE | TITLE NUMBER |
|---|---|---|---|---|---|
| YS3AK76E5R7003225 | 1994 | SAA | 90S | CV | 98131230 |

| NEW USED DEMO | PREVIOUS TITLE NO | PREV STATE | SALES OR USE TAX | CO | ODOMETER |
|---|---|---|---|---|---|
| X | 78193568 | TN TN | | 47 | |

DATE TITLE ISSUED        07-29-2016        REMARKS    DUPLICATE  TITLE
DATE VEHICLE ACQUIRED    08-12-2008

MARK P SKILLMAN
2304 CARRIAGE LANE
KNOXVILLE    TN 37920

SATISFACTORY PROOF OF OWNERSHIP HAVING BEEN
SUBMITTED UNDER TENNESSEE CODE ANNOTATED,
55-3-101, TITLE TO THE MOTOR VEHICLE DESCRIBED
ABOVE IS VESTED IN THE OWNER'S NAME HEREIN.
THIS OFFICIAL CERTIFICATE OF TITLE IS ISSUED
FOR SAID MOTOR VEHICLE.

*YS3AK76E5R7003225*                    *98131230*
*YS3AK78E5R7003225*                    *98131230*
YS3AK76E5R7003225                      98131230



23820311                2 3 8 2 0 3 1 1

THE ORIGINAL DOCUMENT HAS A WHITE REFLECTIVE WATERMARK ON THE BACK. HOLD AT AN ANGLE TO SEE THE MARK.

## STATE OF TENNESSEE

## STATE OF TENNESSEE
## LIEN SATISFACTION

Tennessee Code Annotated section 55-3-114 provides that upon satisfaction of a lien, the lienholder shall within seventy-two (72) hours from the date of discharging the lien notify the Tennessee Department of Revenue of the discharge of this lien by registered mail with return receipt requested. To notify the department, complete the space provided on the Certificate of Title and the Lien Satisfaction on the reverse side of this form. Failure to comply is a class C misdemeanor, 55-3-127.

Detach the completed Lien Satisfaction Form and mail the form to the department at the address indicated below.

If there are additional liens indicated on the title, you will forward the title to the second lienholder. If there are no additional liens indicated on the title, you will forward the title to the owner within seven (7) business days from the date of discharging the lien.

The mailing address for forwarding the Lien Satisfaction Form is as follows:



STATE OF TENNESSEE
DEPARTMENT OF REVENUE
VEHICLE SERVICES DIVISION
44 VANTAGE WAY, SUITE 160
NASHVILLE, TN 37243-8050

▶ FEDERAL and STATE LAW requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

### ASSIGNMENT OF TITLE BY REGISTERED OWNER

This is to be completed by the seller and delivered to the purchaser with the vehicle. Purchaser must make application for a new Certificate of Title with the County Clerk. The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address: (Record lien in space below)



I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
Odometer Reading ☐ 1. I hereby certify that the mileage stated is in excess of the mechanical limits of the odometer.
(No Tenths) ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

SIGNATURE AND ADDRESS OF SELLER(S) _____

SELLER(S) NAME (Hand Printed) _____  SIGNATURE OF BUYER(S) _____ "I am aware of the above odometer certification made by the seller."

DATE OF SALE _____  SIGNATURE OF BUYER(S) _____

SALES PRICE _____  BUYER(S) NAME (Hand Printed) _____

Make, VIN, Value of trade-in _____

▶ LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:
1ST LIEN IN FAVOR OF
NAME & ADDRESS

### FIRST RE-ASSIGNMENT BY LICENSED DEALER
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address: (Record lien in space below)

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
Odometer Reading ☐ 1. I hereby certify that the mileage stated is in excess of the mechanical limits of the odometer.
(No Tenths) ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

SIGNATURE AND ADDRESS OF SELLER(S) _____

SELLER(S) NAME (Hand Printed) _____  "I am aware of the above odometer certification made by the seller."

DATE OF SALE _____  SIGNATURE OF BUYER(S) _____

SALES PRICE _____  BUYER(S) NAME (Hand Printed) _____

Make, VIN, Value of trade-in _____

State Sales Tax _____  Local Option Tax _____

▶ LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:
1ST LIEN IN FAVOR OF
NAME & ADDRESS

### SECOND RE-ASSIGNMENT BY LICENSED DEALER
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address: (Record lien in space below)

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
Odometer Reading ☐ 1. I hereby certify that the mileage stated is in excess of the mechanical limits of the odometer.
(No Tenths) ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY

SIGNATURE AND ADDRESS OF SELLER(S) _____

SELLER(S) NAME (Hand Printed) _____  "I am aware of the above odometer certification made by the seller."

DATE OF SALE _____  SIGNATURE OF BUYER(S) _____

SALES PRICE _____  BUYER(S) NAME (Hand Printed) _____

Make, VIN, Value of trade-in _____

State Sales Tax _____  Local Option Tax _____

▶ LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:
1ST LIEN IN FAVOR OF
NAME & ADDRESS

WHEN FULL, CONTINUE ON TITLE EXTENSION FORM.

*(Vertical text, left margin:)* ANY ALTERATION OR ERASURE VOIDS THIS TITLE



Safeco Insurance Company of Illinois

Mailing Address:
310 E. 96TH ST
INDIANAPOLIS, IN 46240

Phone:   (800) 332-3226
             (317) 660-3234
Fax:      (888) 268-8840

A Liberty Mutual Company

August 3, 2016

Long, Ragsdale & Water Pc
1111 Northshore Drive
Suite S-700
Knoxville, TN 37919

| | |
|---|---|
| Claim Number: | 493377316038 |
| Insured Name: | Mark P Skillman |
| Date of Loss: | December 8, 2015 |
| Policy Number: | F2202904 |
| Underwriting Company: | Safeco Insurance Company of Illinois |

To Whom It May Concern:

**Please take a moment to read this entire letter as it will fully explain how your total loss and the sale of the salvage will be handled. It is important that you understand this process so that we are able to pay your claim as quickly as possible.**

The value of your 1994 SAA 900 S YS3AK76E5R7003225 was determined based on similar vehicles for sale in your local market, considering pre-accident condition, accessories, options, and mileage.

|  | **Company Retains** |
|---|---|
| Actual Cash Value: | $9,051.00 |
| Applicable Taxes/Fees: | $13.00 |
| Less Deductible: | - $100.00 |
| Total Payout for Total Loss: | $8,964.00 |

Upon receipt of your properly signed TITLE and verification that your vehicle has arrived at our salvage yard, we will send your payment. <u>**Cashing this check does not release any portion of your claim.**</u> ***Please reference the enclosed title instructions.**

If your vehicle is <u>currently accruing storage costs</u> at an auto repair facility or tow yard, please be advised that our obligation to pay for <u>storage costs will end as of January 10, 2016.</u> Any costs incurred after this date will be your responsibility.

Please contact your agent to discuss the removal of this vehicle from your policy. Your agent is your best resource for policy issues. They can answer your questions about how this claim may affect your policy.

CA2059 06/16

<u>In order to process the salvage of your vehicle, we need the following from you:</u>

<u>Title:</u> Please make sure if a "Lien Holder" is listed on the title that they have released their interest to the vehicle either on the title itself or on a separate document. Please forward any such documents with your title. We are enclosing instructions on how to sign a title from your specific state. Please remember that a title is a legal document and the state will not process a title that has been altered in any way. This means **no scratch-outs, no "white-out" and do not write any unnecessary information anywhere else on the title. Please read this information carefully as your payment will be delayed if this legal document is not signed properly.** Titles not signed correctly will only delay the process and in most instances, delay the processing of your payment. If you have any questions prior to signing the title, please call and I will be happy to help you out.

Please remove the license plates from the vehicle. The license plates can be transferred to a new vehicle or they will need to be surrendered to the Department of Motor vehicles.

Please reference the example title on this letter. Payment cannot be issued until Safeco has possession of your vehicle and the properly signed title. Please have the registered owner sign the original title and mail it with any spare keys to:

**SAFECO INSURANCE**
**310 E. 96TH ST**
**INDIANAPOLIS, IN 46240**
**ATTENTION: GREG GUDE**

Please let me know if you have any questions or concerns.

Tennesse Example Title (Revers Side)

**Keys:** Please send any spare keys with your paperwork.

Sincerely,

GREGORY GUDE
(317) 660-3234
(800) 332-3226 Fax: (888) 268-8840
GREGORY.GUDE@SAFECO.COM

CA2059 06/16

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | MODEL | BODY TYPE | TITLE NUMBER |
|---|---|---|---|---|---|
| 2G1WX12X1S9304378 | 1995 | CHEV | MOC | 2D | 79578472 |

tame/WK36/1

MARK P SKILLMAN
2304 CARRIAGE LANE
KNOXVILLE     TN 37920

**STATE OF TENNESSEE**
**DEPARTMENT OF REVENUE**

# STATE OF TENNESSEE

VERIFY THE AUTHENTICITY OF THIS MULTI-TONE DOCUMENT. BACKGROUND AREA CHANGES COLOR GRADUALLY FROM TOP TO BOTTOM.

## CERTIFICATE OF TITLE

| VEHICLE IDENTIFICATION NUMBER | YEAR | MAKE | MODEL | BODY TYPE | TITLE NUMBER |
|---|---|---|---|---|---|
| 2G1WX12X1S9304378 | 1995 | CHEV | MOC | 2D | 79578472 |

| NEW | USED | DEMO | PREVIOUS TITLE NO | PREV STATE | SALES OR USE TAX | CO | ODOMETER |
|---|---|---|---|---|---|---|---|
| | X | | 63990053 | TN TN | $138.75 | 47 | |

DATE TITLE ISSUED       03-20-2009       REMARKS
DATE VEHICLE ACQUIRED   03-16-2009

MARK P SKILLMAN
2304 CARRIAGE LANE
KNOXVILLE     TN 37920

SATISFACTORY PROOF OF OWNERSHIP HAVING BEEN
SUBMITTED UNDER TENNESSEE CODE ANNOTATED
55-3-101, TITLE TO THE MOTOR VEHICLE DESCRIBED
ABOVE IS VESTED IN THE OWNER'S NAME HEREIN.
THIS OFFICIAL CERTIFICATE OF TITLE IS ISSUED
FOR SAID MOTOR VEHICLE.



7799744

THE ORIGINAL DOCUMENT HAS A WHITE REFLECTIVE WATERMARK ON THE BACK. HOLD AT AN ANGLE TO SEE THE MARK.

## STATE OF TENNESSEE

STATE OF TENNESSEE
LIEN SATISFACTION

TENNESSEE CODE ANNOTATED SECTION 55-3-114 PROVIDES THAT UPON SATISFACTION OF A LIEN, THE LIENHOLDER WILL WITHIN SEVENTY-TWO (72) HOURS COMPLETE THE SPACE PROVIDED ON THE CERTIFICATE OF TITLE AND THE LIEN SATISFACTION ON THE REVERSE SIDE OF THIS FORM. DETACH THE COMPLETED LIEN SATISFACTION FORM AND MAIL TO THE DEPARTMENT AT THE ADDRESS INDICATED BELOW. IF THERE ARE ADDITIONAL LIENS INDICATED ON THE TITLE, YOU WILL FORWARD THE TITLE TO THE SECOND LIENHOLDER. IF THERE ARE NO ADDITIONAL LIENS INDICATED ON THE TITLE, YOU WILL FORWARD THE TITLE TO THE OWNER WITHIN SEVEN (7) BUSINESS DAYS.

THE MAILING ADDRESS FOR FORWARDING THE LIEN SATISFACTION FORM IS AS FOLLOWS:

STATE OF TENNESSEE
DEPARTMENT OF REVENUE
TAXPAYER & VEHICLE SERVICES DIVISION
44 VANTAGE WAY, SUITE 160
NASHVILLE, TN 37243-8050

▶ FEDERAL and STATE LAW requires that you state the mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

ASSIGNMENT OF TITLE BY REGISTERED OWNER

This is to be filled in by the seller and delivered to the purchaser with the vehicle. Purchaser must make application for a new Certificate of Title with the County clerk. The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address: (Record lien in space below)

☐ I certify, to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
Odometer Reading ☐ 1. I hereby certify that the mileage stated is in excess of the mechanical limits of the odometer.
(No Tenths) ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.



SIGNATURE AND ADDRESS OF SELLER(S)
SELLER(S) NAME (Hand Printed) _____ I am aware of the above odometer certification made by the seller
DATE OF SALE _____ SIGNATURE OF BUYER(S)
SALES PRICE _____ BUYER(S) NAME (Hand Printed)
Make, VIN, Value of trade-in

FIRST RE-ASSIGNMENT BY LICENSED DEALER
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address: (Record lien in space below)

☐ I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
Odometer Reading ☐ 1. I hereby certify that the mileage stated is in excess of the mechanical limits of the odometer.
(No Tenths) ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

SIGNATURE AND ADDRESS OF SELLER(S)
SELLER(S) NAME (Hand Printed) _____ I am aware of the above odometer certification made by the seller
DATE OF SALE _____ SIGNATURE OF BUYER(S)
SALES PRICE _____ BUYER(S) NAME (Hand Printed)
Make, VIN, Value of trade-in
State Sales Tax _____ Local Option Tax

SECOND RE-ASSIGNMENT BY LICENSED DEALER
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address: (Record lien in space below)

☐ I certify, to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
Odometer Reading ☐ 1. I hereby certify that the mileage stated is in excess of the mechanical limits of the odometer.
(No Tenths) ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

SIGNATURE AND ADDRESS OF SELLER(S)
SELLER(S) NAME (Hand Printed) _____ I am aware of the above odometer certification made by the seller
DATE OF SALE _____ SIGNATURE OF BUYER(S)
SALES PRICE _____ BUYER(S) NAME (Hand Printed)
Make, VIN, Value of trade-in
State Sales Tax _____ Local Option Tax

THIRD RE-ASSIGNMENT BY LICENSED DEALER
The undersigned hereby certifies that the vehicle described in this title has been transferred to the following printed name and address: (Record lien in space below)

☐ I certify, to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
Odometer Reading ☐ 1. I hereby certify that the mileage stated is in excess of the mechanical limits of the odometer.
(No Tenths) ☐ 2. The odometer reading is not the actual mileage. WARNING - ODOMETER DISCREPANCY.

SIGNATURE AND ADDRESS OF SELLER(S)
SELLER(S) NAME (Hand Printed) _____ I am aware of the above odometer certification made by the seller
DATE OF SALE _____ SIGNATURE OF BUYER(S)
SALES PRICE _____ BUYER(S) NAME (Hand Printed)
Make, VIN, Value of trade-in
State Sales Tax _____ Local Option Tax

LIENHOLDER TO BE RECORDED AND SHOWN ON NEW TITLE:
NAME/ADDRESS

ANY ALTERATION OR ERASURE VOIDS THIS TITLE



**Safeco Insurance**

A Liberty Mutual Company

Safeco Insurance Company of Illinois

Mailing Address:
310 E. 96TH ST
INDIANAPOLIS, IN 46240

Phone:   (800) 332-3226
         (317) 660-3234
Fax:     (888) 268-8840

August 3, 2016

Long, Ragsdale & Waters Pc
1111 Northshore Drive
Suite S-700
Knoxville, TN  37919

| | |
|---|---|
| Claim Number: | 857277316038 |
| Insured Name: | Mark S Skillman |
| Date of Loss: | December 8, 2015 |
| Policy Number: | F1383150 |
| Underwriting Company: | Safeco Insurance Company of Illinois |

To Whom It May Concern:

**Please take a moment to read this entire letter as it will fully explain how your total loss and the sale of the salvage will be handled. It is important that you understand this process so that we are able to pay your claim as quickly as possible.**

The value of your 1995 CHEV MONTE CARLO Z34 2G1WX12X1S9304378 was determined based on similar vehicles for sale in your local market, considering pre-accident condition, accessories, options, and mileage.

| | **Company Retains** |
|---|---|
| Actual Cash Value: | $1,269.00 |
| Applicable Taxes/Fees: | $130.39 |
| Less Deductible: | - $100.00 |
| Total Payout for Total Loss: | $1,299.39 |

Upon receipt of your properly signed TITLE and verification that your vehicle has arrived at our salvage yard, we will send your payment. <u>Cashing this check does not release any portion of your claim.</u> ***Please reference the enclosed title instructions.**

If your vehicle is <u>currently accruing storage costs</u> at an auto repair facility or tow yard, please be advised that our obligation to pay for <u>storage costs will end as of January 10, 2016.</u> Any costs incurred after this date will be your responsibility.

Please contact your agent to discuss the removal of this vehicle from your policy. Your agent is your best resource for policy issues. They can answer your questions about how this claim may affect your policy.

CA2059 06/16

<u>In order to process the salvage of your vehicle, we need the following from you:</u>

**Title:** Please make sure if a "Lien Holder" is listed on the title that they have released their interest to the vehicle either on the title itself or on a separate document. Please forward any such documents with your title. We are enclosing instructions on how to sign a title from your specific state. Please remember that a title is a legal document and the state will not process a title that has been altered in any way. **This means no scratch-outs, no "white-out" and do not write any unnecessary information anywhere else on the title. Please read this information carefully as your payment will be delayed if this legal document is not signed properly.** Titles not signed correctly will only delay the process and in most instances, delay the processing of your payment. If you have any questions prior to signing the title, please call and I will be happy to help you out.

Please remove the license plates from the vehicle. The license plates can be transferred to a new vehicle or they will need to be surrendered to the Department of Motor vehicles.

Please reference the example title on this letter. Payment cannot be issued until Safeco has possession of your vehicle and the properly signed title. Please have the registered owner sign the original title and mail it with any spare keys to:

SAFECO INSURANCE
310 E. 96th ST
INDIANAPOLIS, IN 46240
ATTENTION: GREG GUDE

Please let me know if you have any questions or concerns.

**Keys:** Please send any spare keys with your paperwork.

Sincerely,

*Gregory O Gude*

GREGORY GUDE
(317) 660-3234
(800) 332-3226 Fax: (888) 268-8840
GREGORY.GUDE@SAFECO.COM

# STATE OF TENNESSEE

## CERTIFICATE OF TITLE

VOID VOID VOID

9701IDX

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE | MODEL | BODY | TITLE NO. |
|---|---|---|---|---|---|
| 1G4EC13E8LB207670 | 90 | BUIC | REG | CV | 4B211420 |

| NEW | USED | PREVIOUS TITLE NO. | PREV. STATE | SALES TAX | CO. | ODOMETER |
|---|---|---|---|---|---|---|
| | | 22509800031 | IL | 3362.90 | 03 | 58934 |

| DATE TITLE ISSUED | DATE ACQUIRED | ACTUAL MILEAGE |
|---|---|---|
| 07-14-94 | 06-01-94 | |

NAME(S) AND ADDRESS OF REGISTERED OWNER(S)

MARK P SKILLMAN
2304 CARRIAGE LN
KNOXVILLE          TN 37920

DATE OF FIRST SECURITY INTEREST

FIRST LIENHOLDER

RELEASE OF LIENS
(FIRST LIEN) INTEREST IN THE DESCRIBED VEHICLE IS HEREBY RELEASED

DATE OF SECOND SECURITY INTEREST

SECOND LIENHOLDER

NAME _____ DATE RELEASED

AUTHORIZED SIGNATURE _____

(SECOND LIEN) INTEREST IN THE DESCRIBED VEHICLE IS HEREBY RELEASED

NAME _____ DATE RELEASED

AUTHORIZED SIGNATURE _____

Commissioner

CONTROL NO.
8193228

STATE OF TENNESSEE DEPARTMENT OF SAFETY

STORE IN A SAFE PLACE — ANY ALTERATION OR ERASURE VOIDS THIS TITLE





Safeco Insurance™

A Liberty Mutual Company

Safeco Insurance Company of Illinois

Mailing Address:
310 E. 96TH ST
INDIANAPOLIS, IN 46240

Phone:   (800) 332-3226
         (317) 660-3234
Fax:     (888) 268-8840

August 3, 2016

Mark P Skillman
2304 Carriage Ln
Knoxville, TN 37920-2808

| | |
|---|---|
| Claim Number: | 173177316038 |
| Insured Name: | Mark P Skillman |
| Date of Loss: | December 8, 2015 |
| Policy Number: | F1207762 |
| Underwriting Company: | Safeco Insurance Company of Illinois |

Dear Mr. Mark P Skillman:

**Please take a moment to read this entire letter as it will fully explain how your total loss and the sale of the salvage will be handled. It is important that you understand this process so that we are able to pay your claim as quickly as possible.**

Thank you for taking the time to discuss your loss with us. The value of your 1990 BUIC REATTA 1G4EC33C0LB907078 was determined based on similar vehicles for sale in your local market, considering pre-accident condition, accessories, options, and mileage. Per our conversation, we discussed the following:

| | **Company Retains** |
|---|---|
| Actual Cash Value: | $4,528.00 |
| Applicable Taxes/Fees: | $409.97 |
| Less Deductible: | - $100.00 |
| Total Payout for Total Loss: | $4,837.97 |

Upon receipt of your properly signed TITLE and verification that your vehicle has arrived at our salvage yard, we will send your payment. **Cashing this check does not release any portion of your claim.** **\*\*\*Please reference the enclosed title instructions.**

If your vehicle is currently accruing storage costs at an auto repair facility or tow yard, please be advised that our obligation to pay for storage costs will end as of January 10, 2016. Any costs incurred after this date will be your responsibility.

Please contact your agent to discuss the removal of this vehicle from your policy. Your agent is your best resource for policy issues. They can answer your questions about how this claim may affect your policy.

<u>In order to process the salvage of your vehicle, we need the following from you:</u>

<u>Title:</u>. Please make sure if a "Lien Holder" is listed on the title that they have released their interest to the vehicle either on the title itself or on a separate document. Please forward any such documents with your title. We are enclosing instructions on how to sign a title from your specific state. Please remember that a title is a legal document and the state will not process a title that has been altered in any way. **This means no scratch-outs, no "white-out" and do not write any unnecessary information anywhere else on the title. Please read this information carefully as your payment will be delayed if this legal document is not signed properly.** Titles not signed correctly will only delay the process and in most instances, delay the processing of your payment. If you have any questions prior to signing the title, please call and I will be happy to help you out.

Please remove the license plates from the vehicle. The license plates can be transferred to a new vehicle or they will need to be surrendered to the Department of Motor vehicles.

Please reference the example title on this letter. Payment cannot be issued until Safeco has possession of your vehicle and the properly signed title. Please have the registered owner sign the original title and mail it with any spare keys to:

SAFECO INSURANCE
310 E. 96TH ST
INDIANAPOLIS, IN 46240
ATTENTION: GREG GUDE

Please let me know if you have any questions or concerns.

CA2069 09/16

Please see Example Title (Reverse Side)



**Keys:** Please send any spare keys with your paperwork.

Page 4
Claim Number 173177316038

Sincerely,

*[signature]*

GREGORY GUDE
(317) 660-3234
(800) 332-3226 Fax: (888) 268-8840
GREGORY.GUDE@SAFECO.COM



# STATE OF TENNESSEE
## CERTIFICATE OF TITLE

SRF NUSA

| VEHICLE IDENTIFICATION NO. | YEAR | MAKE OF VEHICLE | MODEL | BODY TYPE | TITLE NO. |
|---|---|---|---|---|---|
| 1734758426058 | 77 | CHEV | VET | 20 | 5032I063 |

| NEW USED | PREVIOUS TITLE NO. | PREV. STATE | SALES OR USE TAX | LOG | ODOMETER |
|---|---|---|---|---|---|
| X | 44862347 | TN | 25 | | 0 |

| DATE TITLE ISSUED | DATE ACQUIRED | ACTUAL MILEAGE |
|---|---|---|
| 07-24-95 | 05-07-90 | |

NAME(S) AND ADDRESS OF REGISTERED OWNER(S)

MARK P SKILLMAN
2304 CARRIAGE LANE
KNOXVILLE          TN 37920

DATE OF FIRST SECURITY INTEREST  07-03-95
FIRST LIENHOLDER    10233

FENTRESS COUNTY BANK
P O BOX 798
JAMESTOWN          TN 38556

DATE OF SECOND SECURITY INTEREST

SECOND LIENHOLDER

RELEASE OF LIENS
(FIRST LIEN) INTEREST IN THE DESCRIBED VEHICLE IS HEREBY RELEASED
NAME Fentress County Bank     DATE RELEASED 10/1/97
AUTHORIZED SIGNATURE M. J. Beaty
(SECOND LIEN) INTEREST IN THE DESCRIBED VEHICLE IS HEREBY RELEASED
NAME
DATE RELEASED
AUTHORIZED SIGNATURE

Commissioner
STATE OF TENNESSEE DEPARTMENT OF SAFETY

CONTROL NO.
10534766

STORE IN A SAFE PLACE — ANY ALTERATION OR ERASURE VOIDS THIS TITLE

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER

ANY ALTERATION OR ERASURE VOIDS THIS TITLE

FEDERAL and STATE LAW requires that ...
default in fines and/or imprisonment ...

## ASSIGNMENT OF TITLE BY REGISTERED OWNER

The undersigned hereby certifies that the vehicle described ...

I certify to the best of my knowledge ...

SIGNATURE AND ADDRESS OF SELLER(S)
PRINTED NAME
DATE OF SALE
SALES PRICE
Make, VIN, Year of Trade-in

## FIRST RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described ...

I certify to the best of my knowledge ...

SIGNATURE AND ADDRESS OF SELLER(S)
PRINTED NAME
DATE OF SALE
SALES PRICE
Make, VIN, Year of Trade-in
State Sales Tax

## SECOND RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described ...

I certify to the best of my knowledge ...

SIGNATURE AND ADDRESS OF SELLER(S)
PRINTED NAME
DATE OF SALE
SALES PRICE
Make, VIN, Year of Trade-in
State Sales Tax

## THIRD RE-ASSIGNMENT BY LICENSED DEALER

The undersigned hereby certifies that the vehicle described ...

I certify to the best of my knowledge ...

SIGNATURE AND ADDRESS OF SELLER(S)
PRINTED NAME
DATE OF SALE
SALES PRICE
Make, VIN, Year of Trade-in
State Sales Tax

## LIEN HOLDER TO BE RECORDED AND SHOWN ON NEW TITLE
1ST LIEN IN FAVOR OF:
NAME & ADDRESS



Safeco Insurance™

A Liberty Mutual Company

Safeco Insurance Company of Illinois

Mailing Address:
310 E. 96TH ST
INDIANAPOLIS, IN 46240

Phone: (800) 332-3226
        (317) 660-3234
Fax:    (888) 268-8840

August 3, 2016

Long, Ragsdale & Waters Pc
1111 Northshore Drive
Suite S-700
Knoxville, TN 37919

| | |
|---|---|
| Claim Number: | 630277316038 |
| Insured Name: | Mark P Skillman |
| Date of Loss: | December 8, 2015 |
| Policy Number: | F1201091 |
| Underwriting Company: | Safeco Insurance Company of Illinois |

To Whom It May Concern:

**Please take a moment to read this entire letter as it will fully explain how your total loss and the sale of the salvage will be handled. It is important that you understand this process so that we are able to pay your claim as quickly as possible.**

Thank you for taking the time to discuss your loss with us. The value of your 1977 CHEV CORVETTE 1Z37X7S426050 was determined based on similar vehicles for sale in your local market, considering pre-accident condition, accessories, options, and mileage. Per our conversation, we discussed the following:

| | **Company Retains** |
|---|---|
| Actual Cash Value: | $44,040.00 |
| Less Deductible: | - $100.00 |
| Total Payout for Total Loss: | $43,940.00 |

Upon receipt of your properly signed TITLE and verification that your vehicle has arrived at our salvage yard, we will send your payment. **Cashing this check does not release any portion of your claim. ***Please reference the enclosed title instructions.**

If your vehicle is currently accruing storage costs at an auto repair facility or tow yard, please be advised that our obligation to pay for storage costs will end as of January 10, 2016. Any costs incurred after this date will be your responsibility.

Please contact your agent to discuss the removal of this vehicle from your policy. Your agent is your best resource for policy issues. They can answer your questions about how this claim may affect your policy.

CA2059 06/16

<u>In order to process the salvage of your vehicle, we need the following from you:</u>

**Title:** Please make sure if a "Lien Holder" is listed on the title that they have released their interest to the vehicle either on the title itself or on a separate document. Please forward any such documents with your title. We are enclosing instructions on how to sign a title from your specific state. Please remember that a title is a legal document and the state will not process a title that has been altered in any way. This means **no scratch-outs, no "white-out" and do not write any unnecessary information anywhere else on the title. Please read this information carefully as your payment will be delayed if this legal document is not signed properly.** Titles not signed correctly will only delay the process and in most instances, delay the processing of your payment. If you have any questions prior to signing the title, please call and I will be happy to help you out.

Please remove the license plates from the vehicle. The license plates can be transferred to a new vehicle or they will need to be surrendered to the Department of Motor vehicles.

Please reference the example title on this letter. Payment cannot be issued until Safeco has possession of your vehicle and the properly signed title. Please have the registered owner sign the original title and mail it with any spare keys to:

SAFECO INSURANCE
310 E. 96th ST
INDIANAPOLIS, IN 46240
ATTENTION: GREG GUDE

Please let me know if you have any questions or concerns.

**Tennessee Example Title (Reverse Side)**

Keys: Please send any spare keys with your paperwork.

Sincerely,

*[signature]*

GREGORY GUDE
(317) 660-3234
(800) 332-3226 Fax: (888) 268-8840
GREGORY.GUDE@SAFECO.COM



Safeco Insurance™

A Liberty Mutual Company

Safeco Insurance Company of Illinoi.

PO Box 515097
Los Angeles, CA 9001

Mailing Address:
PO Box 515097
Los Angeles, CA 9001

Phone:   (303) 273-6721
Fax:      (888) 268-8840

November 08, 2016

Long, Ragsdale & Waters PC
Attn: Garrett Swartwood
1111 Northshore Drive Suite S-700
Knoxville, TN 37919

| | |
|---|---|
| Insured Name: | Mark Skillman |
| Your Client: | Mark Skillman |
| Policy Numbers: | F1201091, F1207762, F2202904, F1383150 |
| Claim Numbers: | 630277316038, 173177316038, 49337316038, 857277316038 |

Dear Mr. Swartwood:

The above referenced claims were filed with Safeco Insurance Company of Illinois for our consideration. On or around January 04, 2015, your client reported losses involving his 1997 Chevrolet Corvette, 1990 Buick Reatta, 1994 SAA 900, 1995 Chevrolet Monte Carlo and 1984 Mazda RX7. In review of our investigation we were informed that the vehicles listed above were stored at Turner Automotive and were illegally taken and sold. There is currently a civil suit filed against Turner Automotive. The claims were presented for possible coverage under the above policies.

Your TENNESSEE PERSONAL AUTO POLICY (SA-1852/TNEP 10/92) has specific definitions, exclusions and conditions that relate to the types of losses that are covered. Please refer to the following which I have cited below:

## PART D — COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT

A.  We will pay for direct and accidental loss to your covered auto or any non-owned auto, including its equipment, minus any applicable deductible shown in the Declarations. We will pay for loss to your covered auto caused by:

1. Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for that auto.

2. Collision only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a non-owned auto, we will provide the broadest coverage applicable to any vehicle shown in the Declarations.

CV1761 07/12

"Collision" means the upset of your covered auto or a non-owned auto or its impact with another vehicle or object. No deductible will apply if the collision is with another auto insured by a Safeco insurance company.

"Comprehensive" means loss, other than collision, to your covered auto or a non-owned auto. Loss caused by the following are not collision losses but are comprehensive losses: Loss caused by missiles or falling objects; fire; theft or larceny; explosion or earthquake; windstorm; hail, water or flood; malicious mischief or vandalism; riot or civil commotion; contact with a bird or animal; or breakage of glass.

Based on our investigation, the facts surrounding the above claims do not meet the definition of a covered loss; including theft or larceny. Therefore, we are unable to honor your claims.

Although we have quoted specific policy language, please refer to your policy in its entirety as all terms, conditions and exclusions apply. No waiver or estoppel of any kind is intended nor should be inferred. Safeco Insurance Company of Illinois respectfully continues to reserve any and all rights and defenses under the policy and state law, which may now exist or which may arise in the future. We do not waive any of the terms, conditions or requirements of the insurance policy.

If you have any additional information that you believe will have a material effect on our determination of coverage, please provide that information to us in writing at your earliest opportunity. We will fully consider all relevant information.

Sincerely,

Danelle Webb

Safeco Insurance Company of America
(303) 273-6721 Fax: (888) 268-8840
danelle.webb@safeco.com

CV1761 07/12

**Safeco Insurance**™
A Liberty Mutual Company

# SAFECO INSURANCE COMPANY OF ILLINOIS
# AUTOMOBILE POLICY DECLARATIONS

**NAMED INSURED:**
MARK P SKILLMAN
2304 CARRIAGE LN
KNOXVILLE TN 37920-2808

**RENEWAL**

**POLICY PERIOD FROM:** APR. 2 2016
**TO:** OCT. 2 2016

at 12:01 A.M. standard time at
the address of the insured as
stated herein.

**AGENT:**
AKERS INSURANCE AGENCY
PO BOX 12718
KNOXVILLE TN 37912-0718

**AGENT TELEPHONE:**
1-865-584-8299

| RATED DRIVERS | MARK P SKILLMAN | | |
|---|---|---|---|
| 1977 CHEVROLET CORVETTE | CLASSIC CAR | ID# 1Z37X7S426050 | |
| 1986 CHEVROLET CORVETTE | CLASSIC CAR | ID# 1G1YY6787G5901110 | |

Insurance is afforded only for the coverages for which limits of liability or premium charges are indicated.

| COVERAGES | 1977 CHEV LIMITS | PREMIUMS | 1986 CHEV LIMITS | PREMIUMS |
|---|---|---|---|---|
| COMBINED SINGLE LIMIT:<br>BODILY INJURY &<br>PROPERTY DAMAGE<br>LIABILITY | $300,000<br>Each Occurrence | $ 38.00 | $300,000<br>Each Occurrence | $ 38.00 |
| MEDICAL PAYMENTS | $5,000 | 4.00 | $5,000 | 4.00 |
| UNINSURED MOTORISTS:<br>COMBINED<br>BI & PD<br>LIABILITY<br>(PD: $200 DED.) | $300,000<br>Each Accident | 15.00 | $300,000<br>Each Accident | 15.00 |
| COMPREHENSIVE | Agreed Value $44,040<br>Less $100 Deductible | 79.00 | Agreed Value $28,993<br>Less $100 Deductible | 55.00 |
| COLLISION | Agreed Value $44,040<br>Less $500 Deductible | 66.00 | Agreed Value $28,993<br>Less $500 Deductible | 45.00 |
| ADDITIONAL COVERAGES:<br>ROADSIDE ASSIST | | 3.00 | | 3.00 |
| | TOTAL $ | 205.00 | TOTAL $ | 160.00 |

TOTAL EACH VEHICLE: 1977 CHEV $ 205.00
1986 CHEV 160.00

| PREMIUM SUMMARY<br>VEHICLE COVERAGES | PREMIUM<br>$ 365.00 |
|---|---|

TOTAL 6 MONTH PREMIUM FOR ALL VEHICLES ............................... $ 365.00

You may pay your premium in full or in installments. There is no installment fee for the following billing plans: Full Pay, Annual 2-Pay. Installment fees for all other billing plans are listed below. If more than one policy is billed on the installment bill, only the highest fee is charged. The fee is:
  $2.00 per installment for recurring automatic deduction (EFT)
  $5.00 per installment for recurring credit card or debit card
  $5.00 per installment for all other payment methods

P O BOX 515097, LOS ANGELES, CA 90051

SA-1697/EP 8/90

DATE PREPARED: FEB. 22 2016

 **Safeco** Insurance ™
A Liberty Mutual Company

**POLICY NUMBER:** F1207762

## SAFECO INSURANCE COMPANY OF ILLINOIS
## AUTOMOBILE POLICY DECLARATIONS

**NAMED INSURED:**
MARK P SKILLMAN
2304 Carriage Ln
Knoxville TN  37920-2808

**RENEWAL**

**POLICY PERIOD FROM:** APR.  2 2016
                  **TO:** OCT.  2 2016
at 12:01 A.M. standard time at
the address of the insured as
stated herein.

**AGENT:**
AKERS INSURANCE AGENCY
PO BOX 12718
KNOXVILLE     TN    37912-0718

**AGENT TELEPHONE:**
1-865-584-8299

| RATED DRIVERS | MARK P SKILLMAN | | |
|---|---|---|---|
| 1988 MAZDA | RX7 | 2 DOOR CONVERTIBLE | ID# JM1FC3512J0103166 |
| 1990 BUICK | REATTA | CONVERTIBLE | ID# 1G4EC33C0LB907078 |

Insurance is afforded only for the coverages for which limits of liability or
premium charges are indicated.

| COVERAGES | 1988 MAZD LIMITS | PREMIUMS | 1990 BUIC LIMITS | PREMIUMS |
|---|---|---|---|---|
| **COMBINED SINGLE LIMIT:**<br>BODILY INJURY &<br>PROPERTY DAMAGE<br>LIABILITY | $300,000<br>Each Occurrence | $  96.20 | $300,000<br>Each Occurrence | $ 122.70 |
| **MEDICAL PAYMENTS** | $5,000 | 6.70 | $5,000 | 7.20 |
| **UNINSURED MOTORISTS:**<br>COMBINED<br>BI & PD<br>LIABILITY<br>(PD: $200 DED.) | $300,000<br>Each Accident | 54.20 | $300,000<br>Each Accident | 54.20 |
| **COMPREHENSIVE** | Actual Cash Value<br>Less $100 Deductible | 79.40 | Actual Cash Value<br>Less $100 Deductible | 77.50 |
| **COLLISION** | Actual Cash Value<br>Less $500 Deductible | 48.60 | Actual Cash Value<br>Less $500 Deductible | 47.60 |
| **ADDITIONAL COVERAGES:**<br>ROADSIDE ASSIST | | 6.50 | | 6.50 |
| | TOTAL $ | 291.60 | TOTAL $ | 315.70 |

You may pay your premium in full or in installments. There is no installment fee
for the following billing plans: Full Pay, Annual 2-Pay. Installment fees for all
other billing plans are listed below. If more than one policy is billed on the
installment bill, only the highest fee is charged. The fee is:
  $2.00 per installment for recurring automatic deduction (EFT)
  $5.00 per installment for recurring credit card or debit card
  $5.00 per installment for all other payment methods

-CONTINUED-



SA-1607/ER 9/90

DATE PREPARED:  FEB.  23 2016



**Safeco** Insurance ™
A Liberty Mutual Company

# SAFECO INSURANCE COMPANY OF ILLINOIS
# AUTOMOBILE POLICY DECLARATIONS

**NAMED INSURED:**
MARK S SKILLMAN
2304 CARRIAGE LN
KNOXVILLE TN 37920-2808

**RENEWAL**

**POLICY PERIOD FROM:** APR. 2 2016
                **TO:** OCT. 2 2016

at 12:01 A.M. standard time at
the address of the insured as
stated herein.

**AGENT:**
AKERS INSURANCE AGENCY
PO BOX 12718
KNOXVILLE      TN    37912-0718

**AGENT TELEPHONE:**
1-865-584-8299

---

**RATED DRIVERS**    MARK S SKILLMAN

| 1984 MAZDA | RX7 13B | 2 DOOR | ID# JM1FB3326E0836129 |
|---|---|---|---|
| 1995 CHEVROLET MONTE CARLO Z34 | 2 DOOR | | ID# 2G1WX12X1S9304378 |

**Insurance is afforded only for the coverages for which limits of liability or premium charges are indicated.**

| COVERAGES | 1984 MAZD LIMITS | PREMIUMS | 1995 CHEV LIMITS | PREMIUMS |
|---|---|---|---|---|
| **COMBINED SINGLE LIMIT:** **BODILY INJURY &** **PROPERTY DAMAGE** **LIABILITY** | $300,000 Each Occurrence | $ 101.20 | $300,000 Each Occurrence | $ 159.80 |
| **MEDICAL PAYMENTS** | $5,000 | 8.30 | $5,000 | 8.30 |
| **UNINSURED MOTORISTS:** **BODILY INJURY** | $300,000 Each Person $300,000 Each Accident | 36.90 | $300,000 Each Person $300,000 Each Accident | 36.90 |
| **PROPERTY DAMAGE** | $100,000 Each Accident Less $200 Deductible | 12.80 | $100,000 Each Accident Less $200 Deductible | 12.80 |
| **COMPREHENSIVE** | Actual Cash Value Less $100 Deductible | 60.70 | Actual Cash Value Less $100 Deductible | 59.70 |
| **COLLISION** | Actual Cash Value Less $500 Deductible | 39.30 | Actual Cash Value Less $500 Deductible | 44.10 |
| | TOTAL $ | 259.20 | TOTAL $ | 321.60 |

TOTAL EACH VEHICLE:    1984 MAZD $    259.20
                               1995 CHEV    321.60

| PREMIUM SUMMARY | | PREMIUM |
|---|---|---|
| VEHICLE COVERAGES | | $ 580.80 |
| DISCOUNTS & SAFECO SAFETY REWARDS | You saved $115.70 | Included |

TOTAL 6 MONTH PREMIUM FOR ALL VEHICLES ................................. $   580.80

IF YOU PAY IN FULL THE PREMIUM WILL BE REDUCED TO ..................... $   532.80✻
    ✻This includes the available $ 48.00 billing plan discount.

–CONTINUED–



PO BOX 515097 LOS ANGELES CA 90051

SA-1597/EP 9/00

**Safeco Insurance** ™
A Liberty Mutual Company

**POLICY NUMBER: F2202904**

# SAFECO INSURANCE COMPANY OF ILLINOIS
# AUTOMOBILE POLICY DECLARATIONS

**NAMED INSURED:**
MARK P SKILLMAN
2304 CARRIAGE LN
KNOXVILLE TN 37920-2808

**RENEWAL**

**POLICY PERIOD FROM: MAY 7 2016**
**TO: NOV. 7 2016**
at 12:01 A.M. standard time at
the address of the insured as
stated herein.

**AGENT:**
AKERS INSURANCE AGENCY
PO BOX 12718
KNOXVILLE      TN   37912-0718

**AGENT TELEPHONE:**
1-865-584-8299

| RATED DRIVERS | MARK P SKILLMAN | | |
|---|---|---|---|
| 1991 CADILLAC | ALLANTE | CLASSIC CAR | ID# 1G6VS3388MU126966 |
| 1994 SAAB | 900 S | CLASSIC CAR | ID# YS3AK76E5R7003225 |

Insurance is afforded only for the coverages for which limits of liability or
premium charges are indicated.

| COVERAGES | 1991 CADI LIMITS | PREMIUMS | 1994 SAA LIMITS | PREMIUMS |
|---|---|---|---|---|
| COMBINED SINGLE LIMIT:<br>BODILY INJURY &<br>PROPERTY DAMAGE<br>LIABILITY | $300,000<br>Each Occurrence | $ 38.00 | $300,000<br>Each Occurrence | $ 38.00 |
| MEDICAL PAYMENTS | $5,000 | 4.00 | $5,000 | 4.00 |
| UNINSURED MOTORISTS:<br>COMBINED<br>BI & PD<br>LIABILITY<br>(PD: $200 DED.) | $300,000<br>Each Accident | 15.00 | $300,000<br>Each Accident | 15.00 |
| COMPREHENSIVE | Agreed Value $20,366<br>Less $100 Deductible | 40.00 | Agreed Value $9,051<br>Less $100 Deductible | 29.00 |
| COLLISION | Agreed Value $20,366<br>Less $500 Deductible | 34.00 | Agreed Value $9,051<br>Less $500 Deductible | 25.00 |
| ADDITIONAL COVERAGES:<br>ROADSIDE ASSIST | | 3.00 | | 3.00 |
| | TOTAL $ | 134.00 | TOTAL $ | 114.00 |

You may pay your premium in full or in installments. There is no installment fee
for the following billing plans: Full Pay, Annual 2-Pay. Installment fees for all
other billing plans are listed below. If more than one policy is billed on the
installment bill, only the highest fee is charged. The fee is:
  $2.00 per installment for recurring automatic deduction (EFT)
  $5.00 per installment for recurring credit card or debit card
  $5.00 per installment for all other payment methods



-CONTINUED-

Case 3:18-cv-00176-HSM-DCP   Document 1-1   Filed 05/07/18   Page 106 of 109   PageID #:
114

SA-1697/EP 9/90                                  Page 1 of 3          DATE PREPARED: MAR. 28 2016

 **Safeco Insurance**℠

A Liberty Mutual Company

Safeco Insurance Company of Illinois
Safeco Insurance

Mailing Address:

Phone: (678) 512-7836
Fax: (888) 268-8840

May 3, 2017

CERTIFIED RETURNED RECEIPT

Long, Ragsdale & Waters Pc
1111 Northshore Drive
Suite S-700
Knoxville, TN 37919

| | |
|---|---|
| Insured Name: | Mark P Skillman |
| Policy Number: | F1201091 |
| Loss Date: | December 8, 2015 |
| Claim Number(s): | 630277316038, 857277316038, 493377316038, 173177316038 |

Dear Long, Ragsdale & Waters Pc:

This letter is in response to the letter sent by your office on April 10, 2017. We understand that your firm represents Mr. Mark P Skillman in the above referenced claims.

We have reviewed all of the above referenced claims that were originally filed on January 4, 2016 for theft of the below vehicles:

1977 Chevrolet Corvette – VIN - 1Z37X7S426050
1984 Mazda RX 9 – VIN - JM1FB3326E0836129
1995 Chevrolet Monte Carlo – VIN - 2G1WX12X1S9304378
1994 Saab 900S – VIN - YS3AK76E5R7003225
1990 Buick Reatta – VIN - 1G4EC33C0LB907078

Mr. Skillman's TENNESSEE PERSONAL AUTO POLICY (SA-1852/TNEP 10/92) has specific definitions, exclusions and conditions that relate to the types of losses that are covered. Please refer to the following:

PART D — COVERAGE FOR DAMAGE TO YOUR AUTO

INSURING AGREEMENT
A. We will pay for direct and accidental loss to your covered auto or any non-owned auto, including its equipment, minus any applicable deductible shown in the Declarations. We will pay for loss to your covered auto caused by:
1. Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for that auto.
2. Collision only if the Declarations indicate that Collision Coverage is provided for that auto.
If there is a loss to a non-owned auto, we will provide the broadest coverage applicable to any vehicle shown in the Declarations.



**EXHIBIT**

E

"Collision" means the upset of your covered auto or a non-owned auto or its impact with another vehicle or object. No deductible will apply if the collision is with another auto insured by a Safeco insurance company.

"Comprehensive" means loss, other than collision, to your covered auto or a non-owned auto. Loss caused by the following are not collision losses but are comprehensive losses:
Loss caused by missiles or falling objects; fire; theft or larceny; explosion or earthquake; windstorm; hail, water or flood; malicious mischief or vandalism; riot or civil commotion; contact with a bird or animal; or breakage of glass.

Upon investigation of the above claims Safeco discovered that the above vehicles were abandoned at Turner Automotive located on 1808 Riverview Rd. Lenoir City, TN 37771 by Mr. Skillman. Mr. Skillman refused to pick the vehicles up after numerous attempts were made by Mr. Wally Turner to reach out to Mr. Skillman advising him to collect the vehicles before January 1, 2015 or they would lawfully be disposed of.

Safeco Insurance Company of Illinois re-iterates its decision in the original denial letter sent to your firm on November 8, 2016 that these claims do not meet the definition of theft per the above policy language. Therefore, the fact remains that there is no affordable coverage for these losses.

Although we have quoted specific policy language, please refer to your policy in its entirety as all terms, conditions and exclusions apply. No waiver or estoppel of any kind is intended nor should be inferred. Safeco Insurance Company of Illinois respectfully continues to reserve any and all rights and defenses under the policy and state law, which may now exist or which may arise in the future. We do not waive any of the terms, conditions or requirements of the insurance policy.

If you have any questions or concerns regarding this claim, please feel free to contact me.

Sincerely,


Jennifer Jimenez
Safeco Insurance
Safeco Insurance Company of Illinois
(678) 512-7836 Fax: (888) 268-8840
Jennifer.Jimenez@SAFECO.com



STATE OF TENNESSEE
DEPARTMENT OF COMMERCE AND INSURANCE
500 JAMES ROBERTSON PARKWAY
NASHVILLE, TENNESSEE 37243

7017 1450 0002 1326 9222

FIRST CLASS

U.S. POSTAGE >> PITNEY BOWES

ZIP 37243 $ 013.45⁰
02 4W
0000346000 APR 30. 2018

7017 1450 0002 1326 9222          04/19/2018
SAFECO INSURANCE COMPANY OF ILLINOIS
2908 POSTON AVENUE, % C S C
NASHVILLE, TN 37203